Stewart, J.
 

 Section 19, Article I of the Constitution of Ohio states in part:
 

 “Private property shall ever be held inviolate but subservient to the public welfare. * * * where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner.”
 

 Section 6, Article XIII of the Constitution of Ohio states:
 

 “The General Assembly shall provide for the organization of cities, and incorporated villages, by general laws, and restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent the abuse of such power.”
 

 
 *282
 
 In several cases’involving the question whether the General Assembly, under the authority of Section 6, Article XIII of the Constitution of Ohio, can authorize a municipality to levy an assessment against an owner of property, a part of whose land has been taken by condemnation for the making of an improvement, for special benefits arising from the improvement, this court has given diametrically different answers.
 

 In 1868, in the case of
 
 City of Cleveland
 
 v.
 
 Wick,
 
 18 Ohio St., 303, this court unanimously held that an assessment, upon lands fronting on a street, to reimburse the amount of compensation paid the owner for his other land taken for the use of the street was authorized by statute and was not in violation of the constitutional provision which guarantees the owners of the land so taken full compensation without deduction for benefits.
 

 In that case, Judge Welch said that the constitutional provision “simply guarantees to the owner of land condemned a full price. When that is paid, he stands on a perfect equality with all other-owners of adjoining lands, equally liable, as he ought to be, to be taxed upon his other lands with them. He has the full price of his land in his pocket, and is an equal participant with them in benefits to adjoining lands.”
 

 In 1900, in
 
 Cincinnati, Lebanon & Northern Ry. Co.
 
 v.
 
 City of Cincinnati,
 
 62 Ohio St., 465, 57 N. E., 229, 49 L. R. A., 566, this court overruled the
 
 Wick case, supra,
 
 and held that Section 19 of Article I of the Constitution of Ohio is a limitation upon Section 6 of Article XIII as to the power of assessments, and that compensation paid to a landowner for lands taken, by appropriation proceedings, to open a street cannot be assessed back upon the lands of the owner remaining after such taking. Judge Minshall, who concurred
 
 *283
 
 in the judgment, did not join in overruling the
 
 Wick case
 
 because he said the judgment could be justified by the fact that the improvement had not benefited the railroad company against which the assessment was made.
 

 In 1902, in the case of
 
 City of Dayton
 
 v.
 
 Bauman,
 
 66 Ohio St., 379, 64 N. E., 433, this court approved
 
 Cincinnati, L. & N. Ry. Co.
 
 v.
 
 City of Cincinnati, supra,
 
 and extended its doctrine further by holding that the limitation of Section 19 of Article I of the Constitution on Section 6 of Article XIII, as to assessments, goes to the full extent of prohibiting the raising of money directly or indirectly by assessment to pay compensasation, damages or costs for lands appropriated by the public for public use.
 

 In 1922, in the case of
 
 State, ex rel. Shafer,
 
 v.
 
 Otter, County Surveyor,
 
 106 Ohio St., 415, 140 N. E., 399, this court overruled
 
 Cincinnati, L. & N. Ry. Co.
 
 v.
 
 City of Cincinnati, supra,
 
 and paragraph one of the syllabus of the case of
 
 City of Dayton
 
 v.
 
 Bauman, supra,
 
 and approved and followed the case of
 
 City of Cleveland
 
 v.
 
 Wick, supra.
 

 In the opinion in the
 
 Otter case,
 
 Judge Robinson said, on page 433 :
 

 “On the other hand the doctrine of
 
 Cleveland
 
 v.
 
 Wick, supra,
 
 in its practical operation works evenhanded justice to all. The property owner under the Constitution receives full compensation for the lands taken without deduction for benefit. He then has parted with his land, and has in its place its value in money, and, as to his remaining lands, he is in exactly the same position as his neighbors. If such remaining lands and the lands of his neighbors receive special benefits, benefits different from and in addition to the benefits which he and his neighbors received as members of the general public, there is, on principle, no
 
 *284
 
 reason why such lands should not bear ratably and in proportion to special benefits an assessment therefor.”
 

 Thus,. under the law of Ohio, according to this court’s last declaration and, as we view it, the sounder reasoning, where an owner has been paid the full value of property taken from him by condemnation and his remaining land is specially benefited in the same way as adjoining lands by the improvement made, the municipality has the power to make an assessment for such special benefits even though such assessment covers a part of the cost of the land taken, provided the assessment is not greater than the value of the special benefit.
 

 In the instant case, Pickering contends that the city has already collected from it the value of the special benefit. Pickering’s theory is that, because the court in the condemnation proceedings charged the jury as quoted above, the jury must have deducted the value of the special benefits for which the city assessed Pickering from the gross damage to the residue.
 

 Pickering contends that, when the jury in the cony demnation proceedings returned its verdict after having been instructed as above set out, the issue as to the value of the special benefits to its residue property was settled and adjudicated, and cites numerous authorities to the effect that if a party accepts the benefit of a judgment he will be estopped to deny its validity and force, and that a party by receiving benefits under a judgment is estopped to- deny any of its expressed or implied terms.
 

 There is no quarrel with the authorities cited by Pickering and they would be persuasive if the assumption made by Pickering were correct, to wit, that under the instruction of the court in the condemnation proceedings, the jury did deduct from Pickering’s award the amount of the special benefit to Pickering’s residue property from the
 
 completed
 
 East Fifth street.
 

 
 *285
 
 At the time of the condemnation proceedings, the new East Fifth street had not been built and the record in the instant case does not disclose that there was submitted to the jury in the condemnation proceedings any evidence of the nature, the extent, the cost or value of the benefit of the
 
 completed
 
 East Fifth street upon contiguous property. The only thing which the record in the instant case discloses to have been before the jury in the condemnation proceedings was the fact that the north 25 feet of Pickering’s property was being taken to widen East Fifth street. There was no guarantee to Pickering in the condemnation proceedings that the city would complete any plans for further widening beyond the limits of Pickering’s property, or as to the nature, quality and cost of any new street, the kind of sidewalks that would be put in or the drainage and other sanitary arrangements. There were no facts before the jury in the condemnation proceedings by which it could evaluate the special benefit to accrue to the residue of Pickering’s property by the kind of East Fifth street which finally evolved.
 

 Therefore, it - would seem that when the eourt instructed the jury in the condemnation proceedings to take into account the sum which the jury considered to be an amount representing the special benefit to the residue and specifically applicable to the residue, it must have meant, and the jury must have understood it to mean, something different from the special benefit of the completed East Fifth street because such special benefit from the
 
 completed
 
 East Fifth street was impossible to estimate at that time without indulging in mere guesswork and speculation.
 

 Since the record in the instant case discloses no evidence before the jury in the condemnation proceedings with reference to the completed street, what was there before such jury to justify the court’s instruction?
 

 
 *286
 
 The application was for appropriation of a part of Pickering’s property for the widening of East Fifth street, so that Pickering knew and the jury knew that the property which would remain in Pickering’s ownership would still be a corner lot and would have as to it an East Fifth street 25 feet wider than the one along side the original lot. For example, if the city had appropriated the same 25 feet of Pickering’s property for a firehouse, a police station or other public building, that would have meant that Pickering’s residue would no longer be a corner lot, would be deprived of light and air, and in such case it is obvious that the damage to the residue by the taking away of the corner would be much greater than the appropriation for widening of East Fifth street which left the residue a corner lot. That must have béen the special benefit which the court had in mind in its special charges to the jury in the condemnation proceedings because that matter was before the jury and was not the subject of speculation and guesswork. Upon any other hypothesis, the instructions of the court would have been erroneous as applicable to elements of the case without evidence to support them and Pickering’s remedy for any prejudice to it would have been an appeal.
 

 Pickering was paid the full value of its 25 feet taken, namely, more than .$259,000. It was paid the full value of its buildings on its original lot, namely, more than $149,000. It still retained its residue lot, 54 feet 6 inches on Main street by 63.26 feet on East Fifth street, but received as damages to that residue, because of the 25 feet being separated from it, more than $89,000. This residue lot remains a corner lot, and the magnificent East Fifth street upon which it abuts has specially benefited this residue lot in the same way that it has benefited all the rest, not only the abutting
 
 *287
 
 property but contingous property a long distance from the site of the improvement, which is included within the assessment district. As we have said, the amount of special benefit has been stipulated between the city and Pickering in the event it is found that Pickering has not already paid for the special benefit conferred on its property by the completed East Fifth street.
 

 The condemnation proceedings were concluded and Pickering had in its possession the money representing the value of its land taken, the full value- of its buildings upon that land and the full value of the damage to its residue property as found by the jury after taking into consideration the special benefits accruing to the residue at the time the jury made its award. Values at the time of the condemnation proceedings are those which are applicable. See
 
 Miami Conservancy District
 
 v. Bowers, 100 Ohio St., 317, 125 N. E., 876.
 

 We hold that under the undisputed facts in this case the city has not been paid by Pickering for the special benefits accruing to its property by reason of the completed, improved East Fifth street, and that Pickering is not entitled to have the collection of the assessment against it enjoined.
 

 A question has arisen with reference to a matter of interest. It is contended by Pickering that, in the event the assessment against it should be sustained, it should have an opportunity to pay in cash and be relieved of all interest..
 

 When the assessments were originally made in 1933, it was provided, that, in case they were not paid in cash within 30 days of the passage of the assessment ordinance, they should be paid in 20 equal annual installments, with interest at the rate of five per cent
 
 *288
 
 per annum on the deferred payments. Pickering did not pay in cash and its assessment was certified to the county auditor for payment in installments. Thereafter the city, in other cases, agreed to settle for 70 per ce'nt of the amount of the installments and fixed the installment payments over a period of 20 years from 1937.
 

 After the Court of Appeals made its entry validating the 70 per cent assessment against Pickering, the co’urt gave the privilege to Pickering to pay, during the period of 30 days following the entry, the sum of the adjusted-assessment installments for the years 1937 to 1946, inclusive, plus the present value of the remaining installments of assessments as authorized in the years from 1947 to 1956, inclusive, and ordered that, in case of failure to make such payment within the 30 days, the city should void the 1933 assessment amounts previously certified against Pickering and should be authorized, in lieu thereof, to certify the adjusted installments of payments from 1937 to 1956, inclusive, to the county auditor for collection according to law, the installments from 1937 to 1946, inclusive, to be payable at the time of collection of the 1946 taxes.
 

 The action of the Court of Appeals in the exercise of its equitable powers was fair and generous. Pickering has as yet paid out no money upon its assessment and has had the money due from it in its possession. It is now relieved from any interest from 1934 to 1937; and as to the interest from 1937 on, Pickering is in the same position as all the other property owners who have been assessed for the special benefits from the completed East Fifth street.
 

 This court held in
 
 Gest
 
 v.
 
 City of Cincinnati,
 
 26 Ohio St., 275, that where assessment proceedings are found defective, in ordering the amount properly chargeable
 
 *289
 
 against the lot owner, interest may be allowed from the time fixed for the payment of the assessment.
 

 The order of the Court of Appeals with reference to interest was certainly not erroneous as against Pickering.
 

 The decree of the Court of Appeals is affirmed.
 

 Decree affirmed.
 

 Weygandt, C. J., Turner, Matthias, Hart, Zimmerman and Sohngen, JJ., concur.