UNION TITLE CO., APPELLANT, *v.* STATE BOARD OF EDUCATION ET AL.,
APPELLEES.

[Cite as Union Title Co. *v.* State Bd. of Edn. (1990), 51 Ohio St. 3d 189.]

(No. 89-632—Submitted March 14, 1990—Decided June 13, 1990.)

*Dennis R. Clunk,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Christopher M. Culley,* for appellee State Board of Education.

*Rankin M. Gibson,* for appellee Bd. of Edn. of Marlington Local School District.

HOLMES, J. The sole issue presented in this case is whether an order issued by the State Board of Education disapproving the transfer of certain school district territory pursuant to R.C. 3311.06 may be appealed to the court of common pleas pursuant to R.C. 119.12. For the reasons which follow, we hold that such an order may be appealed.

Section 4, Article VI of the Ohio Constitution mandates the creation of a State Board of Education and requires the General Assembly to prescribe its powers and duties. One of the powers and duties of the State Board pursuant to the constitutional mandate is found in R.C. 3311.06, which relates to the transfer of school territory following municipal annexations. Further, R.C. 3301.13 provides that "[i]n the exercise of any of its functions or powers, including the power to make rules and regulations and to prescribe minimum standards[,] the department of education, and any officer or agency therein" is subject to R.C. Chapter 119. And, R.C. 119.12 provides that "[a]ny party adversely affected by any order of an agency issued pursuant to any other adjudication may appeal to the court of common pleas of Franklin county."[2]

Thus, it appears that an order of the State Board denying a transfer of certain school district territory under R.C. 3311.06 is appealable by a party adversely affected by that order. However, there are further considerations necessary when construing an administrative order, such as whether the order is quasi-judicial or quasi-legislative in character. In *M.J. Kelley Co.* v. *Cleveland* (1972), 32 Ohio St. 2d 150, 61 O.O. 2d 394, 290 N.E. 2d 562, paragraph one of the syllabus, this court held: "The review of proceedings

---

[2] Section 4(B), Article IV of the Ohio Constitution provides that "[t]he courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law."

of administrative officers and agencies, authorized by Section 4(B), Article IV of the Ohio Constitution, contemplates quasi-judicial proceedings only, and administrative actions of administrative officers and agencies not resulting from quasi-judicial proceedings are not appealable to the Court of Common Pleas under provisions of R.C. 2506.01. (*Fortner* v. *Thomas* [1970], 22 Ohio St. 2d 13, approved and followed.)" Also, "[p]ermitting appeal from a quasi-judicial proceeding is based on the premise that an adjudication has been made by the agency which determines the rights or duties of parties with conflicting interests — in other words, there is a justiciable dispute requiring evaluation and resolution. Implicit in this concept is the exercise of discretion." *Rossford Exempted Village School Dist.* v. *State Bd. of Edn.* (1989), 45 Ohio St. 3d 356, 359, 544 N.E. 2d 651, 654.

In explaining the distinction between quasi-legislative and quasi-judicial proceedings, this court stated in *Rankin-Thoman, Inc.* v. *Caldwell* (1975), 42 Ohio St. 2d 436, 438, 71 O.O. 2d 411, 413, 329 N.E. 2d 686, 688, that "[q]uasi-judicial proceedings require notice, hearing and the opportunity for introduction of evidence. * * * Quasi-legislative proceedings do not. More frequently, however, courts have examined the nature of the proceedings themselves, to ascertain whether they involve the making or revising of rules, rather than the application of rules in an adjudicatory manner." Similarly, in *Donnelly* v. *Fairview Park* (1968), 13 Ohio St. 2d 1, 42 O.O. 2d 1, 233 N.E. 2d 500, this court held, at paragraph one of the syllabus, that: "A public body essentially legislative in character may act in an administrative capacity." In *Donnelly*, the appellants appealed the city of Fairview Park's failure to accept a resubdivision proposal. The city claimed that its actions were legislative in nature and, therefore, non-appealable. This court disagreed by holding that the adoption or amendment of a zoning regulation or ordinance is a legislative act, but the failure or refusal to approve a resubdivision of land coming within the terms of a zoning regulation or ordinance already adopted and in existence is an administrative matter, and that an appeal from such failure or refusal to approve lies to the court of common pleas under R.C. Chapter 2506.

Also, in *Donnelly*, this court established a test for distinguishing between quasi-legislative and administrative actions taken by legislative bodies. "The test for determining whether the action of a legislative body is legislative or administrative is whether the action taken is one enacting a law, ordinance or regulation, or executing or administering a law, ordinance or regulation already in existence." *Id.* at paragraph two of the syllabus. Thus, if the action of a legislative body creates a law, that action is legislative in character, but if the action of that body consists of executing an existing law, the action is adjudicatory (quasi-judicial)[3] or administrative in

---

[3] R.C. 119.01(D) defines "adjudication" as: "the determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person, but does not include the issuance of a license in response to an application with respect to which no question is raised, nor other acts of a ministerial nature."

R.C. 119.06 provides in pertinent part that: "* * * No adjudication order shall be valid unless an opportunity for a hearing is afforded in accordance with sections 119.01 to 119.13 of the Revised Code. * * *"

character. *Id.* at 4, 42 O.O. 2d at 3, 233 N.E. 2d at 502; *Rankin-Thoman, Inc., supra.*

In *Bd. of Edn.* v. *State Bd. of Edn.* (1976), 45 Ohio St. 2d 117, 120, 74 O.O. 2d 215, 217, 341 N.E. 2d 589, 592, this court held that former "R.C. 3311.06 gives the board no guides or standards to use in approving or disapproving the transfer of territory from one school district to another * * *. Therefore, the act of the board in approving a transfer of territory pursuant to R.C. 3311.06 is itself a legislative act. * * *" In interpreting *Bd. of Edn., supra,* this court later held that "[t]he act of the Ohio State Board of Education disapproving a transfer of territory pursuant to [former] R.C. 3311.06 is a legislative act, and, as such, is not appealable pursuant to R.C. 119.12." *Bd. of Edn. of Marion* v. *Bd. of Edn. of Elgin* (1981), 66 Ohio St. 2d 152, 20 O.O. 3d 165, 420 N.E. 2d 990, syllabus; see, also, *Rossford Exempted Village School Dist., supra,* at 360, 544 N.E. 2d at 655.

Recently, the State Board promulgated[4] Ohio Adm. Code 3301-89-01 through 3301-89-03 in order to provide a framework for the transfer of territory under R.C. 3311.06 and 3311.24. Ohio Adm. Code 3301-89-01(A). These administrative code provisions provide for notice, hearing and the exercise of discretion. Specifically, Ohio Adm. Code 3301-89-01(D) provides: "* * * In those situations where agreement does not exist, the state board of education will thoroughly examine the stated reasons for and against the requested transfer and provide *due process* to all parties involved as set forth in paragraph (E) of rule 3301-89-02 of the Administrative Code." (Emphasis added.)

Ohio Adm. Code 3301-89-02 sets forth the procedures which must be employed to carry out a transfer of territory under R.C. 3311.06 and 3311.24. In particular, Ohio Adm. Code 3301-89-02(B) requires that each school district involved in a proposed transfer of territory provide answers to the following questions:

"(1) Why is the request being made?

"(2) Are there racial isolation implications?

"(a) What is the percentage of minority students in the relinquishing district?

"(b) What is the percentage of minority students in the acquiring district?

"(c) If approved, would the transfer result in an increase in the percentage of minority pupils in the relinquishing district?

"(3) What long-range educational planning for the students in the districts affected has taken place?

"(4) Will the acquiring district have the fiscal and human resources to efficiently operate an expanded educational program?

"(5) Will the acquiring district have adequate facilities to accommodate the additional enrollment?

"(6) Will both of the districts involved have pupil population and property valuation sufficient to maintain high school centers?

"(7) Will the proposed transfer of territory contribute to good district organization for the acquiring district?

"(8) Does the acquiring district have the capacity to assume any finan-

---

[4] The administrative code provisions at issue state that they were promulgated pursuant to R.C. Chapter 119. Since neither of the parties has challenged the subject code provisions, we will assume, *arguendo,* in this case, they were properly adopted.

cial obligation that might accompany the relinquished territory?

"(9) Will the loss of either pupils or valuation be detrimental to the fiscal or educational operation of the relinquishing school district?

"(10) Have previous transfers caused substantive harm to the relinquishing district?

"(11) Is the property wealth in the affected area such that the motivation for the request could be considered a tax grab?

"(12) Are there any school buildings in the area proposed for transfer?

"(13) What are the distances between the school buildings in:

"(a) The present area?

"(b) The proposed area?

"(14) If approved, will the requested transfer create a school district with noncontiguous territory?

"(15) Is the area being requested an isolated segment of the district of which it is a part?

"(16) Will the municipal and school district boundary lines become coterminous?

"(17) For both of the districts:

"(a) What is the inside millage?

"(b) What is the outside operating millage?

"(c) What is the bonded indebtedness millage?"

Further, Ohio Adm. Code 3301-89-02(E) provides: "Upon receipt of the data from the department of education, the state board of education may declare its intention to consider the request for transfer of certain territories from one school district to another by passing a resolution of intention to consider the matter and providing the parties an opportunity for a hearing." Next, if a request for a hearing is subsequently received by the Department of Education, a referee will be appointed and a hearing date will be set. Ohio Adm. Code 3301-89-02(F). In making a report and recommendation to the State Board the referee's actions are governed by the provisions of Ohio Adm. Code Chapter 3301-89.[5] Ohio Adm. Code 3301-89-02(G).

After a referee has made his or her

---

[5] There are several factors which a referee appointed to hear a request for transfer of territory pursuant to R.C. 3311.06 or 3311.24 must consider, as set forth in Ohio Adm. Code 3301-89-03:

"(A) A referee appointed to hear a transfer request under section 3311.06 or 3311.24 of the Revised Code shall consider the information provided by the school districts under paragraph (B) of rule 3301-89-02 of the Administrative Code and shall be governed by the provisions of Chapter 3301-89 of the Administrative Code.

"(B) Other factors that a referee shall consider in hearing any request for a transfer of territory for school purposes include, but are not necessarily limited to:

"(1) Documented agreements made by public agencies involved in municipal annexation proceedings should be honored;

"(2) A previous agreement entered in-

to by the school districts concerned should be honored unless all concerned districts agree to amend it;

"(3) There should not be undue delay in requesting a transfer for school purposes after a territory has been annexed for municipal purposes;

"(4) The transfer shall not cause, preserve, or increase racial isolation;

"(5) All school district territories should be contiguous unless otherwise authorized by law;

"(6) School district boundary lines that have existed for a long period of time should not be changed if substantial upheaval results because of long-held loyalties by the parties involved;

"(7) The pupil loss of the relinquishing district should not be such that the educational program of that district is severely impaired;

"(8) The fiscal resources acquired

report to the State Board the affected parties will have the opportunity to submit written objections to the report. Ohio Adm. Code 3301-89-02 (G)(1) and (2). Also, the affected parties may file responses to the objections. Ohio Adm. Code 3301-89-02 (G)(4).

The State Board's decision whether to approve, disapprove or modify the referee's recommendation is limited solely to the record of the hearing, the report of the referee and any objections or responses filed by the parties. Ohio Adm. Code 3301-89-02 (H).

In reviewing the facts in the present case we find that the transfer of territory request by the Alliance school board was subjected to the requirements of Ohio Adm. Code 3301-89-01 *et seq.* Consequently, the affected parties were provided with notice, a hearing, and the opportunity to introduce evidence. Clearly, the State Board was applying or executing the provisions of R.C. 3311.06 in an adjudicatory manner, thereby making its decision appealable pursuant to R.C. Chapter 119. See *Donnelly, supra; Rankin-Thoman, Inc., supra; Rossford Exempted Village School Dist., supra,* at 359, 544 N.E. 2d at 654 ("in deciding whether an act * * * is quasi-judicial, the '* * * most common test is to determine whether the function under consideration involves the exercise of discretion and requires notice and hearing,' all elements being required to constitute a quasi-judicial act").

In *Rossford, supra,* we held that "[a]n appeal may be taken to the court of common pleas pursuant to R.C. 119.12 from an order of the State Board of Education resulting from a hearing or adjudication pursuant to a request for transfer of territory pursuant to R.C. 3311.24." *Id.* at syllabus. In arriving at this conclusion we construed the language contained in R.C. 3311.24 which, in effect, provides due process rights to the affected parties. Specifically, "* * * [t]he state board of education may, if it is advisable, provide for a hearing in any suitable place in any of the school districts affected by such proposed transfer of territory. * * *" R.C. 3311.24. Similarly, in the present case the administrative code provisions (Ohio Adm. Code 3301-89-01 through 3301-89-03) afford due process rights to the affected parties. Thus, the concerns expressed in *Rossford* regarding the exercise of discretion, notice and a hearing have been satisfied in this case by the promulgation of the code provisions pursuant to R.C. 3301.13 and 119.12. As we stated in *Hamilton Cty. Bd. of Mental Retardation & Developmental Disabilities* v. *Professionals Guild of Ohio* (1989), 46 Ohio St. 3d 147, 151, 545 N.E. 2d 1260, 1265, "the decision whether to proceed by rule making or adjudication to resolve a dispute lies primarily in the informed discretion of the administrative agency." (Citations omitted.) Furthermore, "[a]n administrative board has the authority to use either quasi-legislative promulgation of general rules designed to address a general issue or to use a quasi-judicial proceeding when a specific dispute arises * * *." *Id.* Here, it was within the State Board's discretion to provide an adjudicative process for the transfer of territory pursuant to R.C. 3311.06. The decision was the product of administrative experience, appreciation of the complexities of the problem, and realization of the statutory poli-

---

should be commensurate with the educational responsibilities assumed; and

"(9) The educational facilities of districts should be effectively utilized."

cies. "It * * * [was] the type of judgment which administrative agencies are best equipped to make and for which the administrative process is most appropriate. See *Republic Aviation Corp.* v. *Natl. Labor Relations Bd.* (1945), 324 U.S. 793, 800." *Id.* at 151, 545 N.E. 2d at 1266.

We conclude that the act of the State Board of Education disapproving a transfer of territory request pursuant to R.C. 3311.06 is a quasi-judicial act and, as such, is appealable under R.C. 119.12, where the affected parties are provided with notice, a hearing, and the opportunity to present evidence pursuant to Ohio Adm. Code Chapter 3301-89. Since *Bd. of Edn. of Marion* v. *Bd. of Edn. of Elgin, supra,* and *Rossford Exempted Village School Dist., supra,*[6] were decided prior to the promulgation of Ohio Adm. Code 3301-89-01 *et seq.*, they are distinguished from the present case and *Bd. of Edn. of Marion* is limited to its facts.

Finally, since the trial court failed to address the issue of Union's standing to bring the appeal we must remand this cause for such determination.

Therefore, for the foregoing reasons, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for proceedings not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., WRIGHT, H. BROWN and RESNICK, JJ., concur.

SWEENEY and DOUGLAS, JJ., dissent.

---

[6] The discussion in *Rossford Exempted Village School Dist., supra,* regarding former R.C. 3311.06 was addressed only to the statute, and the progeny of cases construing the statute, prior to the promulgation of the administrative code provisions, Ohio Adm. Code 3301-89-01 *et seq.* Therefore, that portion of *Rossford* is distinguishable on its facts from the present case.