THOMAS et al., Appellees,

v.

CITY OF BEAVERCREEK, Appellant.

[Cite as *Thomas v. Beavercreek* (1995), 105 Ohio App.3d 350.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 94–CA–97.

Decided July 12, 1995.

351

*Thomas H. Lagos,* for appellee.

*David L. Eubank,* for appellant.

FAIN, Judge.

Defendant-appellant, city of Beavercreek, appeals from a judgment of the trial court, in an appeal from an action by the Beavercreek City Council, holding that an ordinance passed by the Council in accordance with R.C. 727.08 is in conflict with Section 11, Article XVIII of the Ohio Constitution. The city of Beavercreek contends that the trial court lacked jurisdiction to hear the appeal from the City Council's decision to adopt the recommendation of its Assessment Equalization

Board (the "board"). Beavercreek also contends that even if the trial court had jurisdiction to hear the appeal, it erred when it concluded that R.C. 727.08 conflicts with Section 11, Article XVIII of the Ohio Constitution.

We agree that the City Council's decision to adopt the board's recommendation was not a decision of an administrative agency of a political subdivision, as defined in R.C. 2506.01, and therefore we agree that the trial court did not have jurisdiction to hear the appeal of the City Council's decision. Accordingly, the judgment of the trial court is reversed, and this court will enter the judgment that the trial court should have entered as a matter of law, dismissing the administrative appeal, pursuant to App.R. 12(B).

Our decision that the trial court lacked jurisdiction to hear the administrative appeal in this case moots all other assignments of error. However, because the trial court's holding, that the procedure set forth in R.C. 727.08 for the assessment of costs of public improvement projects against adjacent property owners violates the Ohio Constitution, is, in our opinion, both erroneous and of great interest to political subdivisions within our jurisdiction, we will discuss that issue in this opinion, at least to the extent of indicating our disagreement with the opinion of the trial court.

## I

In April 1993, the city of Beavercreek began a street improvement project on a portion of Colonel Glenn Highway abutting property owned by the plaintiffs-appellees. The Beavercreek City Council passed a "resolution of necessity" ordinance for the project, which included a plan to pay for the project through assessments from the abutting properties that would benefit from the project. Specifically, the ordinance set forth "[t]hat all (100%) of the cost of the improvement, less two percent thereof and * * * less fifty percent of the cost of appropriating real estate and interest in real estate required for said improvement, shall be assessed on all lots and land bounding and abutting on the improvement. These lots and lands are determined to be specially benefitted by the improvement."

The project plan and estimated assessments were filed with the Beavercreek Clerk of Council, and the affected landowners were given proper notice of the project and proposed assessments. Plaintiffs-appellees, Stewart W. Thomas and the other aggrieved property owners, filed timely objections to the proposed assessments. In response, the City Council of Beavercreek appointed an Assessment Equalization Board ("the board") to conduct a hearing on the objections and provided the property owners with notice of the time, date, and location of the hearing. After conducting the hearing, the board overruled the property owners'

objections and recommended to the City Council that the assessments be made in accordance with the plan set forth in the resolution of necessity. The City Council accepted the board's recommendation.

Stewart W. Thomas and the other aggrieved property owners (hereinafter referred to collectively as "Thomas") appealed the Beavercreek City Council's adoption of the board's recommendation to the Greene County Court of Common Pleas on August 25, 1993. Thomas asserted that the Beavercreek City Council's decision to adopt the special assessments as approved by the board was unconstitutional, illegal, arbitrary, capricious, and unsupported by the preponderance of substantial evidence regarding the special benefit conferred.

In response, Beavercreek asserted that the City Council's decision to adopt the recommendation of the board lacked finality and was a legislative, not a quasijudicial, action. As such, Beavercreek argued that the decision was not an "appealable order" within the meaning of R.C. 2506.01 and that the trial court lacked jurisdiction to hear the appeal of the matter. Alternatively, Beavercreek asserted that the evidence presented to the board supported the estimated special assessments on the properties and established the special benefits conferred.

On October 14, 1993, a hearing on the matter was held in the Greene County Court of Common Pleas. In a judgment entered August 22, 1994, the trial judge presumed the court's jurisdiction to hear the appeal and held that R.C. 727.08 is in conflict with Section 11, Article XVIII of the Ohio Constitution. He also held that the special assessment proposed by the city of Beavercreek, which meets the requirements of R.C. 727.08, is unconstitutional. Moreover, the trial judge determined that the record of the proceedings before the political subdivision did not support a finding of a special benefit conferred on the properties. Accordingly, the trial judge ordered the City Council's action vacated, and ordered that the matter be remanded to the city of Beavercreek for further proceedings regarding a determination of the special benefit conferred on each property abutting the proposed improvement.

The city of Beavercreek appeals from the judgment of the trial court.

## II

Because it is dispositive of the case, we will address the third assignment of error first. Beavercreek's third assignment of error is as follows:

"The court below was in error by finding that the resolution of city council accepting and approving the recommendation of the Board of Equalization was subject to an administrative appeal."

Section 4, Article IV of the Ohio Constitution provides, in pertinent part, that "[t]he courts of common pleas * * * shall have such original jurisdiction over all

justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law." R.C. 2506.01 grants the court of common pleas jurisdiction to hear appeals of final orders or decisions of any administrative agency in any political subdivision of the state of Ohio. R.C. 2506.01, in pertinent part, provides:

"Every *final* order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county. * * * A 'final order, adjudication, or decision' means an order, adjudication, or decision *that determines rights, duties, privileges, benefits, or legal relationships of a person * * *.*" (Emphasis added.)

■ In addition to the finality requirement set forth in R.C. 2506.01, in order for the court of common pleas to have jurisdiction to review the decision, it must be a final resolution of a quasi-judicial proceeding. *State ex rel. McArthur v. DeSouza* (1992), 65 Ohio St.3d 25, 27, 599 N.E.2d 268, 269–270, citing *Fortner v. Thomas* (1970), 22 Ohio St.2d 13, 51 O.O.2d 35, 257 N.E.2d 371; *M.J. Kelley Co. v. Cleveland* (1972), 32 Ohio St.2d 150, 61 O.O.2d 394, 290 N.E.2d 562. In other words, the decision being appealed must have resulted from the exercise of the agency's administrative power as a result of a quasijudicial proceeding, rather than the exercise of the agency's legislative authority, which the court cannot review. *Donnelly v. Fairview Park* (1968), 13 Ohio St.2d 1, 42 O.O.2d 1, 233 N.E.2d 500.

■ To be considered a quasijudicial proceeding, the proceeding must resemble a court proceeding in that an exercise of discretion is employed in adjudicating the rights and duties of parties with conflicting interests. *Talbut v. Perrysburg* (1991), 72 Ohio App.3d 475, 478, 594 N.E.2d 1046, 1047–1048, citing *Union Title Co. v. State Bd. of Edn.* (1990), 51 Ohio St.3d 189, 190–191, 555 N.E.2d 931, 931–933. Moreover, the Ohio Supreme Court has previously determined that "proceedings of administrative officers and agencies are not quasi-judicial where there is no requirement for notice, hearing and the opportunity for the introduction of evidence." *McArthur, supra*, 65 Ohio St.3d at 27, 599 N.E.2d at 270, citing *Kelley, supra*, at paragraph two of the syllabus.

In the case before us, Thomas appealed from the Beavercreek City Council's decision to adopt the board's recommendation. Accordingly, we must determine whether the decision made by the Beavercreek City Council was a final, quasijudicial decision that the court of common pleas had jurisdiction to review.

R.C. 727.01 *et seq.* sets forth the procedure that a political subdivision must follow in order to properly levy a special assessment to pay for a public improvement. The basic procedure requires that (1) the political subdivision

must pass a resolution of necessity for the improvement and place the plans and estimated assessments on file in the clerk's office; (2) the property owners of the lots to be assessed must receive notice of the passage of the resolution of necessity and the proposed assessments; (3) within two weeks of receiving notice of the resolution, the property owners may file objections to the proposed assessments with the clerk of the municipality; (4) if objections are filed, the political subdivision must appoint an assessment equalization board to hear the objections, set a date and time for a hearing, and provide the objectors with notice of the hearing; (5) the assessment equalization board must hear and determine the objections and submit its recommended resolution to the legislative authority, which can approve or disapprove the recommendation; (6) after the board's recommendation is approved by the legislative authority, the legislative authority must pass an ordinance stating its intention to proceed with the improvement project; (7) after the project is completed and the cost of the improvement has been incurred, the legislative authority of the municipal corporation must pass an ordinance levying the assessment for the costs according to the method provided in the resolution of necessity; (8) notice of the ordinance levying the assessment shall be given to the affected property owners by newspaper publication; and (9) the property owners must pay the special assessment in the manner set forth in the assessing ordinance. R.C. 727.12 through 727.27.

In this appeal, Beavercreek asserts that the City Council's decision to adopt the board's recommendation was not a final order within the definition of R.C. 2506.01, and, therefore, the trial court did not have jurisdiction to review the decision. Beavercreek also contends that the City Council's passage of the resolution adopting the recommendation of the board was not the result of a quasijudicial proceeding because the City Council was not required to hold a hearing before adopting the recommendation of the board. Accordingly, Beavercreek asserts that the City Council acted in its legislative capacity when it approved the board's recommendation, and that a legislative decision cannot be the subject of judicial review pursuant to R.C. 2506.01.

Thomas responds that the City Council's decision to adopt the board's recommendation regarding the special assessments was a final order within the purview of R.C. 2506.01. Thomas characterizes the whole process of approving a special assessment as being a quasijudicial process based on notice and the opportunity to be heard before the board. In other words, he asserts that the City Council's decision was a quasijudicial decision because of the quasijudicial proceeding held before the Assessment Equalization Board. Additionally, Thomas asserts that City Council's acceptance of the board's recommendation involved an exercise of

discretion that adjudicated the rights of the parties, so that it is a reviewable, quasijudicial decision.

Although Thomas correctly asserts that the proceedings before the board provided him with notice and an opportunity to present evidence and was, therefore, a quasijudicial proceeding, he mischaracterizes the decision from which he appeals. He is not appealing from the recommendation of the board that resulted from the quasijudicial hearing; instead, he is appealing from the City Council's adoption of the recommendation, which was a decision that did not require any notice or opportunity to be heard. Accordingly, the fact that the proceedings before the board, had it finally decided anything, might have been of a quasijudicial nature does not make quasijudicial the action of the City Council in approving the board's recommendation. In other words, the action of the Assessment Equalization Board, while otherwise quasijudicial, was not final, whereas the action of the City Council was not quasijudicial.

Thomas cites *Tolson v. Oregon* (1976), 53 Ohio App.2d 183, 7 O.O.3d 251, 372 N.E.2d 1360, in support of his position that the City Council's adoption of the board's recommendation is an appealable order. The *Tolson* court concluded that a city council's adoption of an assessment equalization board's recommendation regarding a special assessment is a "final order adjudication or decision" within the purview of R.C. 2506.01. In so holding, the *Tolson* court stated that the City Council, "by its approval of the board's recommendation, made a final determination of the benefit to plaintiffs of the improvement vis-a-vis other property owners similarly assessed, even though the council still had to determine by ordinance whether to proceed with the assessment and even though the total cost of the improvement was subject to revision." *Id.* at 184, 7 O.O.3d at 251–252, 372 N.E.2d at 1362.

We are unable to reconcile the conclusion reached in the *Tolson* decision with the requirements for finality and a quasijudicial decision recognized by the Ohio Supreme Court; therefore, we decline to follow *Tolson*.

As discussed above, the procedure set forth in R.C. Chapter 727 does not require the City Council to provide property owners with notice or an opportunity to be heard before it determines whether it will adopt the board's recommendation. Moreover, because the City Council's adoption of the board's recommendation does not conclusively determine the rights or duties of the parties, the City Council's acceptance of the board's recommendation is not a final order. Instead, it is a preliminary measure that must be taken before the City Council can decide to proceed with the improvement as planned and before the City Council can levy the actual assessment in a later ordinance after the project is completed.

The City Council's decision to adopt the recommendation of the Assessment Equalization Board was not rendered as the result of an exercise of the City

Council's quasijudicial powers, and the decision to approve the recommendation was not a final determination of the rights of the parties. Accordingly, we conclude that the court of common pleas did not have jurisdiction to review the decision.

In support of its position that the City Council's decision to adopt the recommendation of the board was not an appealable decision within the purview of R.C. 2506.01, the city of Beavercreek cites *Motz v. Richfield* (1992), 80 Ohio App.3d 483, 609 N.E.2d 621. In *Motz*, the Summit County Court of Appeals held that the adoption of the final ordinance that levies a special assessment is not an appealable order within the definition of R.C. Chapter 2506 and that an injunction is the proper procedural means for judicial review. The court in *Motz* reasoned that, because R.C. 2506.01 did not include the passing of an ordinance in its list of the types of decisions that may be appealed under the authority of the statute, there was no right under R.C. 2506.01 to appeal a council's passage of an ordinance.

We agree with the *Motz* court's conclusion that the passage of an ordinance to levy a special assessment is not a decision that a trial court has jurisdiction to review in an administrative appeal. However, we cite different reasons for this conclusion.

According to the procedure set forth in R.C. Chapter 727 for making an assessment, the proceeding before the Assessment Equalization Board can fairly be characterized as quasijudicial in nature; however, the outcome of that proceeding is not a final order, but merely a recommendation to the legislative authority. On the other hand, although the City Council has the ability to pass an ordinance levying an assessment, and that is a final determination of the rights and duties of the parties, that decision is not the result of the exercise of the council's quasijudicial authority. Based on the foregoing, we conclude that the procedure set forth in R.C. Chapter 727 for the imposition of a special assessment does not result in an administrative decision that a court of common pleas has jurisdiction to review pursuant to R.C. 2506.01. Instead, the proper procedural remedy to permit judicial review of an ordinance imposing a special assessment is an action to enjoin the assessment. See *Motz, supra;* R.C. 2723.03. See, also, *Wolfe v. Avon* (1984), 11 Ohio St.3d 81, 11 OBR 324, 463 N.E.2d 1251; *Schiff v. Columbus* (1967), 9 Ohio St.2d 31, 38 O.O.2d 94, 223 N.E.2d 54.

Because the Beavercreek City Council's decision to approve the Assessment Equalization Board's recommendation was not an appealable order of an administrative agency within the definition of R.C. 2506.01, the trial court lacked

jurisdiction to review the decision. Accordingly, the action before the trial court should have been dismissed for lack of subject matter jurisdiction.

The city of Beavercreek's third assignment of error is sustained.

### III

Beavercreek's first assignment of error is as follows:

"The court below was in error in finding that Section 727.08 R.C. was in violation of Ohio Constitution Article XVIII, Section 11."

Thomas's first assignment of error has been rendered moot under App.R. 12(A)(1)(c) by our ruling on the third assignment of error. Therefore, the first assignment of error is overruled. However, we will discuss the question of law raised by this assignment of error for whatever assistance it might be to the parties in subsequent actions involving the issues raised in the present case.

The Ohio Supreme Court has held that a municipality may raise money to pay for a public improvement by levying an assessment against a property owner for the amount of the special benefit conferred on the land by the improvement, even if a part of the property owner's land has been taken by condemnation for making the improvement, and that the assessment may include a part of the cost of appropriating the land taken. *Pickering Hardware Co. v. Cincinnati* (1948), 149 Ohio St. 275, 284, 36 O.O. 577, 580, 78 N.E.2d 563, 567.

Earlier, after some conflicting decisions on the issue, in *State ex rel. Shafer v. Otter* (1922), 106 Ohio St. 415, 140 N.E. 399, paragraph five of the syllabus, the Ohio Supreme Court reversed its position regarding the inclusion of the cost of appropriating property in an assessment. Specifically, the *Otter* court held:

"The property owner under the Constitution receives full compensation for the lands taken without deduction for benefit. He then has parted with his land, and has in its place its value in money, and, as to his remaining lands, he is in exactly the same position as his neighbors. If such remaining lands and the lands of his neighbors receive special benefits, benefits different from and in addition to the benefits which he and his neighbors received as members of the general public, there is, on principle, no reason why such lands should not bear ratably and in proportion to the special benefits an assessment therefor." *Id.* at 433–434, 140 N.E. at 404–405, overruling *Cincinnati, Lebanon & N. Ry. Co. v. Cincinnati* (1900), 62 Ohio St. 465, 57 N.E. 229, and paragraph one of the syllabus of *Dayton v. Bauman* (1902), 66 Ohio St. 379, 64 N.E. 433, and approving and following *Cleveland v. Wick* (1868), 18 Ohio St. 303.

The court's decision in *Otter* was in harmony with Section 11, Article XVIII of the Ohio Constitution, which was enacted ten years earlier in 1912 for the specific

purpose of overruling the court's holding in *Dayton v. Bauman, supra,* which prohibited a special assessment from including the cost of appropriating property. See 2 Ohio Constitutional Convention, Proceedings and Debates (1912) 1476.

Although the Ohio Supreme Court has held that a municipality can assess part of the cost of appropriating property, it has not addressed the question of the proper amount that may be assessed for the cost of appropriating land. The specific constitutional question raised by the parties in the case before us involves the extent of the constitutional limitations set forth in Section 11, Article XVIII of the Ohio Constitution as they affect the amount of an assessment that a municipal corporation may levy for a public improvement and the constitutional validity of the statutory scheme providing for the amount of costs that may be assessed as set forth in R.C. 727.08.

Section 11, Article XVIII of the Ohio Constitution specifically addresses the assessment powers of a municipal corporation when appropriating property and provides:

"Any municipality appropriating private property for a public improvement may provide money therefor in part by assessments upon benefitted property not in excess of the special benefits conferred upon such property by the improvements. Said assessments, however, upon all the abutting, adjacent, and other property in the district benefitted, shall in no case be levied for more than fifty per centum of the cost of such appropriation."

Pursuant to Section 6, Article XII of the Ohio Constitution, the General Assembly enacted R.C. 727.08, which sets forth the specific expenses of an approved public project that may be included in an assessment. In pertinent part, it provides:

"The cost of any public improvement to be paid for directly or indirectly, in whole or in part, by funds derived from special assessments may include but not be limited to:

"(A) The purchase price of real estate or any interest therein when acquired by purchase, or not more than fifty per cent of the cost of acquiring such real estate or any interest therein when acquired by appropriation."

The particular language of Section 11 involved in the present controversy is the meaning of "[s]aid assessment." Specifically, the question arises regarding which assessment is being limited to fifty percent of the cost of the appropriation—the assessment for the cost of appropriating property or the whole assessment for the total cost of the improvement project?

In the case before us, in addition to recognizing the "special benefit" constitutional limit on an assessment, the trial judge interpreted Section 11, Article XVIII as further limiting the total amount of an assessment for a project

involving the appropriation of property to fifty percent of the cost of acquiring the property by appropriation. Based on this interpretation of the Ohio Constitution, the trial judge held that R.C. 727.08, which permits a municipal corporation to assess fifty percent of the cost of appropriating property in addition to the other costs of the project, unconstitutionally exceeds the limitations set forth in Section 11, Article XVIII and thereby interferes with a citizen's right to hold private property. Accordingly, the trial judge held that R.C. 727.08 is unconstitutional, vacated the city of Beavercreek's proposed assessment, and determined that the assessment cannot exceed fifty percent of the total cost of appropriating the property.

In contrast, the construction of Section 11 advanced by the city of Beavercreek, and the construction presumably followed by the General Assembly when enacting R.C. 727.08, interprets "said assessment" to be a reference to the assessment for the cost of appropriating property. Beavercreek asserts that the limitation set forth in Section 11 limits only that portion of an assessment for the cost of appropriating property to fifty percent of the cost of the appropriation and that R.C. 727.08 constitutionally permits an assessment to include fifty percent of the cost of a land appropriation in addition to all the other costs of the improvement project. Moreover, the city of Beavercreek asserts that the trial judge's interpretation of the constitutional limits on an assessment is inconsistent with the original purpose and intent of Section 11, Article XVIII.

When construing the meaning of a constitutional provision or a statute, we are bound by the rule of construction that requires that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.42. Moreover, when interpreting the meaning of an amendment to the Constitution, we must be guided by the well-known principle that "[i]n the interpretation of an amendment to the Constitution the object of the people in adopting it should be given effect; the polestar in the construction of constitutional, as well as legislative provisions, is the intention of the makers and the adopters thereof." *Castleberry v. Evatt* (1946), 147 Ohio St. 30, 33 O.O. 197, 67 N.E.2d 861, paragraph one of the syllabus. We also note that when necessary, the debates of a constitutional convention may provide some assistance in construing the meaning of a constitutional amendment by providing some insight as to what was intended to be achieved by the adoption of the provision. *Steele, Hopkins & Meredith Co. v. Miller* (1915), 92 Ohio St. 115, 122, 110 N.E. 648, 649–650.

When considering the meaning of "said assessment" within the context of the language of Section 11, we conclude that the most natural and reasonable reading of the section supports the conclusion that the "said assessment" being limited to fifty percent of the cost of the appropriation is the assessment for the appropria-

tion of property authorized in the preceding sentence. We also find this construction to be supported when considered within the overall context of the impetus behind the enactment of the Section 11.

As was noted above, through the passage of Section 11, Article XVIII, the Constitutional Convention intended to overrule the Ohio Supreme Court's position precluding the inclusion of the cost of appropriating property in an assessment, and to allow municipal corporations to levy assessments to collect at least part of the cost of appropriating the property needed for a public improvement.

Based on our review of the proceedings and debates of the Constitutional Convention of 1912, it also appears that Mr. Harris, the chairman of the convention's committee on municipal corporations, proposed language, eventually adopted as Section 11, to strike a balance between the public's obligation to compensate for the public benefit, which is necessary to justify the appropriation of private property, and the municipality's right to require a property owner to contribute to the cost of providing a special benefit to his property. Mr. Harris justified his amendment by explaining that "while the municipality may take private property for public uses, it may not put upon the private property owners of that public property more than fifty per cent of the cost of making such improvements. * * * From my point of view I say the public is benefitted to the extent of no less than fifty per cent, otherwise, why does the public appropriate that individual's private property?" 2 Proceedings and Debates (1912) 1476–1477.

Mr. Rockel, who spoke in support of Mr. Harris's amendment, cited the positive effect that the amendment would have in deterring municipalities from excessively condemning private property by requiring them to pay fifty percent of the cost of acquiring the private property. *Id.* at 1478. Additionally, in support of his proposed amendment, Mr. Harris cited the legal brief written by an advocate of his proposal in which the author agreed that "[t]he public * * * should pay fifty per cent of the cost of the appropriation." *Id.* at 1477.

Based on the foregoing language of the debates of the convention, it appears that the framers of Section 11 intended to require the municipality to pay fifty percent of the cost of appropriating private property to compensate for the benefit that the public receives from the appropriation. Accordingly, the intentions of the framers of Section 11, as extrapolated from the debates of the convention, bolsters our construction of Section 11 as interpreted from the more natural reading of the language of the amendment.

We note that discerning the intent of the framers is not without difficulty. In fact, our inquiry into the debates of the constitutional convention of 1912 uncovers an interesting question—did the framers intend Section 11 to limit the *total* assessment for a public improvement involving, as one component, the appropriation of land, to fifty percent of the *total* cost of the project, as opposed to a

limitation merely of that *component* of the assessment corresponding to the appropriation of land to fifty percent of the cost of that *component* of the project involving the acquisition of land?[1] Although this intention is not directly reflected in the language of Section 11, a close reading of the text of the debates lends some support to this interpretation.

For example, Mr. Harris stated that "[t]he intent of the amendment is to say that the total cost shall not be in excess of *fifty per cent of the improvement*." (Emphasis added.) Proceedings and Debates, *supra*, at 1477. Additionally, as previously noted, Mr. Harris stated that "while the municipality may take private property for public uses, it may not put upon the private owners of the public property more than fifty per cent of the *cost of making improvements*." (Emphasis added.) *Id.* at 1476. Moreover, in a statement of support for the passage of Section 11, Mr. Knight stated that "[i]t seems to me that this proposed amendment is wise and liberal and goes as far as it ought to go in providing that fifty per cent of the *entire cost of the improvement* should be levied on the specially benefitted property and the remaining fifty per cent upon the municipality as a whole." (Emphasis added.) *Id.* at 1478.

On the one hand, the framers may have intended the limitation of assessments to fifty percent of the cost of the "improvement" to have been referring to the appropriation of land as "the improvement," thereby intending Section 11 merely to limit that part of an assessment for the appropriation of land to fifty percent of the cost of the appropriation. On the other hand, it is possible that the framers may have intended Section 11 to impose a much broader limitation that would limit the total assessments for all of the costs of an improvement to fifty percent of the total cost of the improvement.

We leave this issue to another day.

For the moment, we content ourselves with observing that we find no support in the debates for the construction of the limitation advanced by Thomas and adopted by the trial court. Nowhere in the text of the debates is it suggested that Section 11 was intended to limit the total assessments for a public improvement to fifty percent of the cost of appropriating the property on which the improvement is to be constructed. Nor do we find this conclusion to be supported by the more natural reading of Section 11.

Based on the foregoing, we conclude that the trial court's construction of the limitation set forth in Section 11 is contrary to law.

---

1. In other words, in a $1,000,000 public improvement project including land acquisition costs of $200,000, are the total assessments limited to $500,000 (fifty percent of the total project costs), or are they limited to $900,000 (fifty percent of the land acquisition costs plus one hundred percent of the remaining $800,000 cost of the project)?

## IV

Beavercreek's second, fourth, and fifth assignments of error are as follows:

"The court below was in error by overruling defendant-appellant's motion to dismiss the administrative appeal.

"The court below committed error in ordering that a transcript of the proceedings before the Board of Equalization be prepared and made part of the record.

"The court below was in error on standard of review for administrative appeals and erred by not entering judgment in favor of appellants."

These assignments of error have been rendered moot, pursuant to App.R. 12(A)(1)(c), by our resolution of the third assignment of error. Accordingly, the second, fourth, and fifth assignments of error are overruled as moot.

## V

Thomas's third assignment of error having been sustained, the judgment of the trial court is reversed, and the administrative appeal filed in the trial court is dismissed for lack of subject-matter jurisdiction.

*Judgment accordingly.*

GRADY and FREDERICK N. YOUNG, JJ., concur.