KURE ET AL., APPELLANTS, v. CITY OF NORTH ROYALTON, APPELLEE.

(No. 51130—Decided December 4, 1986.)

*Robert Sindyla* and *Lynn W. Leary,* for appellants.

*J. Melvin Andrews,* for appellee.

ANN MCMANAMON, J. The plaintiffs below are taxpayers and residents of the city of North Royalton who appealed from a declaratory judgment granted to the city of North Royalton ("the city") in the court of common pleas. The taxpayers contend that a charter amendment which requires that a zoning change agreed to by the city council must also be approved by the electorate applies to a rezoning application for a Planned Unit Development ("PUD") pending at the time of the amendment's adoption.[1] We find the taxpayers' argument to be well-taken, and therefore we reverse.

North Royalton is a charter municipality with a comprehensive zoning plan codified in its ordinances. The Royalton Sprague Company, a real estate developer, acquired two hundred forty-one acres of land in the city which was zoned for single-family residential use at the time of purchase.

In June 1981, the developer applied to the city planning commission for a change in the zoning classification of its land from single-family residential to that of a PUD. After a detailed and lengthy study of the proposed development, the planning commission, on May 11, 1982, voted to recommend approval of the zoning change to city council. On June 16, the council initiated discussions concerning the developer's proposal. On July 21, 1982, after notice and public hearings, the city council proposed to amend the charter by adopting Article XII, Section (d) of the city charter, which required that any change in zoning classification from areas zoned for single-

---

[1] Plaintiffs raise three assignments of error, which will be consolidated for review:

I

"The trial court erred in granting defendant-appellee's motion for summary judgment."

II

"The trial court erred in overruling plaintiffs-appellants' motion for summary judgment."

III

"The trial court erred in overruling plaintiffs-appellants' motion for reconsideration of its prior ruling overruling plaintiffs-appellants' motion for summary judgment."

family residential use to any other zoning classification agreed to by city council be approved by a mandatory favorable vote in a referendum.

While the developer's application was pending, the electorate adopted the proposed charter amendment at the November 2, 1982 general election. On March 16, 1983, after notice and public hearings, council enacted Ordinance No. 1982-131 which approved the planning commission's recommendation for reclassification of the subject property to permit the proposed project, and made a notation on the city zone map to reflect the change. However, council's rezoning action was not submitted to the voters for ratification.

The taxpayers, who own property adjacent to and surrounding the developer's property, requested the city law director to institute legal action to require submission of the rezoning issue to the electorate pursuant to the charter amendment. The law director failed to act as requested, and the taxpayers filed the instant action in the court of common pleas, seeking a judgment declaring that the charter amendment required that the proposed zoning change be submitted to the voters. After the city answered, the plaintiffs moved for summary judgment, which was overruled. The city subsequently moved for summary judgment, maintaining that Ordinance No. 1982-131 was properly adopted; that no voter approval was necessary for a zoning change from single-family residential to a PUD; and that the developer was entitled to have its PUD plan considered and approved under the law as it existed at the time the original application was filed. The trial court granted the city's motion and entered judgment preventing the application of the charter amendment to the zoning change.

The threshold question raised by this appeal is whether the procedural mechanism by which a zoning change is effected is governed by the law in effect at the time of the landowner's application for such change, or by the charter amendment enacted during the pendency of the city's consideration of the proposal.

The general rule is that an appellate court must decide a case based on the law as it exists at the time of its decision, and, therefore, an amended provision controls unless a vested right has accrued under the prior law. See 4 Anderson, American Law of Zoning (3 Ed. 1986) 592, Section 27.38. In *Gibson* v. *Oberlin* (1960), 171 Ohio St. 1, 12 O.O. 2d 1, 167 N.E. 2d 651, a case strongly relied upon by both parties, the Supreme Court held that legislation enacted pending an applicant's attempted enforcement of his right to a building permit through administrative or legal channels cannot deprive the applicant of the right. We find *Gibson* inapplicable to the instant case.

The record is devoid of evidence of any substantial change of position by the developer which might establish a vested right which could not be vitiated by the charter amendment. See *Smith* v. *Juillerat* (1954), 161 Ohio St. 424, 53 O.O. 340, 119 N.E. 2d 611. In interpreting *Gibson, supra,* this court has stated that the *Gibson* court "was concerned about those situations in which a municipality enacts legislation whose only purpose serves to thwart an applicant's attempted enforcement of a right to which he was clearly entitled at the time of application." *Gross* v. *Strongsville* (Jan. 25, 1980), Cuyahoga App. No. 40338, unreported, at 8. There is no evidence of such entitlement in this case. Further, enactment of the charter amendment resulted in no material substantive changes in the applicable zoning laws relevant to the developer's proposed plan. Unlike *Gibson,* the amendment in the instant case

effects no change in the use classification of the subject property. It merely imposes an additional procedural requirement, *i.e.,* submission of a zoning change to a referendum, by which to effect such a change.

We hold that since the new provision involves no disruption or obliteration of a substantive right, it should be given retroactive application.

The city argues, assuming, *arguendo,* that the mandatory referral provision should be applied retroactively, legislative history of the provision demonstrates that PUDs were specifically excluded from the requirement.

As originally introduced; the proposed amendment required PUD plans to be referred for voter approval. It read:

## "PROPOSED CHARTER AMENDMENT

"That any change from R1-A and R1-B single family zoned areas will require a mandatory fifty-five percent (55%) favorable vote of all votes cast of the qualified electors of North Royalton at the next regular municipal election.

"That any proposed Planned Unit Development will require a mandatory fifty-five percent (55%) favorable vote of all votes cast of the qualified electors of North Royalton at the next regular municipal election."

The record reflects that, during extensive discussions concerning the amendment at the July 21, 1982 city council meeting, its primary proponent, Mrs. Syzmczyk, moved to amend the first paragraph to read:

"That any change in zoning classification from R1-A and R1-B single family zoned areas to any other zoning classification shall require a mandatory majority favorable vote of all votes cast of the qualified electors of North Royalton at the next regular municipal election. *Second paragraph to be deleted.*" (Emphasis added.)

This motion was passed. Accordingly, in its final form, the provision requiring mandatory voter approval made no specific reference to PUDs. It is the city's position that city council intended to exclude PUDs altogether from the application of the amendment. We disagree.

A review of the minutes of the July 21, 1982 council meeting reveals that there was a lengthy discussion concerning whether the amendment's proponents intended it to safeguard all existing residential zoning, *e.g.,* single- as well as multi-family districts, or intended it to apply only to changes in single-family zoned districts. City council elected to limit submission to the electorate of those zoning changes which would affect single-family districts. Nothing in the record or the exhibits attached to the parties' respective summary judgment motions indicates an intention to exclude PUDs from the amendment's coverage. We will not speculate concerning the possible reasons for deletion of the specific reference to PUDs, especially since, in our view, construction of a PUD would substantially alter the single-family zoning to which the subject parcel was originally limited.

Finally, the city argues that a change from R1-A or R1-B zoning to a PUD is not a change in "zoning classification" under the amendment, and therefore need not be submitted for voter approval. It is the city's position that a "PUD" does not fall within the city zoning ordinance definition of "zoning classification" although it is technically listed as a separate "zoning district" under Section 3.01, which provides for classification of separate use districts. According to the city, Section 3.01 and Chapters 8 and 9, governing PUDs, when read *in pari materia,* contemplate that a PUD is

simply a "use of land" to be implemented within an existing residentially zoned district. This conclusion further follows, in part, from the fact that when incorporated in the zoning ordinance, the zone map designated no specific areas for PUDs, although it was anticipated that some areas designated residential on the map might later become PUDs. We disagree with this analysis.

PUDs permit certain aspects of land development normally regulated by zoning to vary within a geographically defined area zoned for single-family use. See *Gray* v. *Trustees of Monclova* (1974), 38 Ohio St. 2d 310, 67 O.O. 2d 365, 313 N.E. 2d 366. Any planned development introduces an element of flexibility into the zoning of large parcels of land, allowing for a variety of uses while preserving open spaces and natural topography with little or no increase in the density of residences within the area. See 2 Anderson, American Law of Zoning (3 Ed. 1986) 415 *et seq.*, Sections 11.01-11.24. Thus, a PUD may contain any combination of structures, *e.g.*, single-family dwellings, multi-family dwellings, schools, open spaces, parks, recreational facilities, theatres, restaurants, churches, museums, offices, hotels, and any number of other incidental non-residential uses. As the Supreme Court has stated, "[i]n short, a PUD is often a self-contained, although not necessarily politically separate, community." *Gray* v. *Trustees of Monclova, supra,* at 311, 67 O.O. 2d at 365, 313 N.E. 2d at 367.

While a PUD district allows for many permissible uses, it is clear that the legal effect of a PUD assigned to a particular parcel of land is a rezoning. In analyzing the legal effect of a nearly identical planned development known as a Community Unit Plan or "CUP," the Supreme Court has stated:

"As a practical matter, the implementation of the CUP effects a zoning change of this area. When the board of county commissioners approve[s] the CUP, the pre-existing Residence A-2 classification remained in name only. As this court stated in *Gray* v. *Trustees of Monclova Twp., supra,* at 314, footnote 4: 'The overall zoning classification in a PUD area can be termed "nominal" because it does not, by itself, indicate the specific zoning restrictions in the area. These restrictions are ascertainable only by referring to the approved plats for the development.' " *Peachtree Development Co.* v. *Paul* (1981), 67 Ohio St. 2d 345, 352, 21 O.O. 3d 217, 221, 423 N.E. 2d 1087, 1092.

The Washington Supreme Court in *Lutz* v. *Longview* (1974), 83 Wash. 2d 566, 569, 520 P. 2d 1374, 1376, cited with approval in *Peachtree,* stated:

"The authorities are clear that such a change in permitted uses is a rezone or amendment of the zoning ordinance. 'The end product is, of course, an amendment to the zoning ordinance which reclassifies the land in question.' 2 R. Anderson American Law of Zoning, § 8.38, at 19 (1968). In *Sheridan* v. *Planning Bd. of Stamford,* 159 Conn. 1, 17, 266 A. 2d 396, [404] (1969), the court declared that:

" '[W]hen a zoning board grants an application requesting it to apply a floating zone to a particular property, *it alters the zone boundaries of the area by carving a new zone out of an existing one.*' (Italics ours.)

"Indeed, substantial changes in the characteristics of the proposed PUD have been held to be an act of rezoning, requiring a second compliance with rezoning procedures, even though the PUD was previously affixed. *Millbrae Ass'n. for Residential Survival* v. *Millbrae,* 262 Cal. App. 2d 222, 69 Cal. Rptr. 251 (1968)."

We reject the city's argument that the proposed change to a PUD is analo-

gous to the granting of use permits or a variance. It is true that, at the outset, a PUD frequently is not affixed to any defined area, but is labelled a "floating zone" which hovers over the city until subsequent legislative action confines it to a particular area. See 2 Anderson, American Law of Zoning (3 Ed. 1986) 427-431, Section 11.06. However, such subsequent changes do not constitute variances or uses permitted as falling within the scope and purpose of property originally zoned R1-A, but rather, are substantial alterations in the physical characteristics peculiarly indigenous to the established R1-A district.

The taxpayers also urge that council's approval of Ordinance No. 1982-131 is the functional equivalent of legislative rezoning and is therefore subject to referendum pursuant to the Supreme Court's position in *Gray, supra,* and *Peachtree, supra.* As we have noted, these cases do stand for the proposition that the reclassification of land under a zoning ordinance is a legislative function lawfully subject to a referendum. While factually analogous to the instant case, however, *Peachtree* involved a zoning amendment which was subject to a referendum pursuant to R.C. 303.12. That section governs petitions requesting referenda for zoning changes in counties, and is inapplicable to the case at bar.

Plaintiffs further raise the question whether certain provisions contained in Chapter 8 of the city's zoning ordinance, which governs procedures for preparation, review, and implementation of development plans for PUDs, conflict with the charter amendment which requires submission of zoning changes to a referendum. Specifically, the taxpayers contend that the charter amendment conflicts with Sections 8.06, 8.08, and 8.14, which essentially provide that, once

council approves a preliminary PUD plan, a zoning change of land in a standard residential district to a PUD is effected merely by a notation on the zone map, to reflect the area rezoned for PUD use.

Plaintiffs correctly argue that no valid ordinance can conflict with a city charter provision. *Reed* v. *Youngstown* (1962), 173 Ohio St. 265, 19 O.O. 2d 119, 181 N.E. 2d 700. However, after reading these sections *in pari materia* with the charter amendment, we find the PUD procedures outlined in the zoning ordinance, including amendment of the zoning map, to be supplemental to, and not in conflict with, the amendment requiring voter ratification of land use changes. In this regard, we note that, contrary to the city's position, implementation of a PUD requires more than a mere notation on the zoning map. For example, after having secured rezoning of the property through adoption of a preliminary plan, the applicant is nevertheless required to obtain approval of a final development plan, presumably as a supplement to the initial plan.

Finally, the taxpayers contend that the record contains no evidence that a preliminary development plan was approved by formal action of the planning commission. This contention is unsupported by the record, which reflects that on May 11, 1982, the planning commission reviewed the preliminary plan and passed a motion to recommend that the plan be approved by council.

For the foregoing reasons, we hold that implementation of the proposed PUD would constitute a rezoning, which may only be accomplished pursuant to the provisions of the local ordinance and charter governing rezoning. In the instant case, one such provision permits and, indeed, mandates that the voters evaluate the desirability of a PUD. Accordingly, the trial

court erred in failing to require the city to refer the proposed zoning change to the electorate for approval, as required by the city's charter amendment.

The decision of the trial court overruling the taxpayers' motion for summary judgment and granting summary judgment in favor of the city is reversed.

Final judgment is entered for the plaintiffs-taxpayers.

*Judgment reversed.*

NAHRA, P.J., and CORRIGAN, J., concur.