JURKIEWICZ et al., Appellees,

v.

BUTLER COUNTY BOARD OF ELECTIONS; Todd
Development Company, Inc., Appellant.

[Cite as *Jurkiewicz v. Butler Cty. Bd. of Elections* (1993), 85 Ohio App.3d 503.]

Court of Appeals of Ohio,
Butler County.

No. CA91–04–063.

Decided March 29, 1993.

*Carl Morgenstern Co., L.P.A.,* and *Roger Gates,* for appellees.

*Ralph A. Henderson,* for appellant.

*Per Curiam.*

The defendant-appellant, Todd Development Company, Inc. ("Todd"), appeals a decision of the Butler County Court of Common Pleas determining that a zoning change made with regard to one of Todd's properties could be challenged by referendum. Todd asserts two assignments of error: (1) that the pertinent statutes do not provide for a referendum on the zoning change, and (2) that the court of common pleas failed to apply the correct legal standard in reversing the decision of the Butler County Board of Elections that a referendum was not required. We find neither assignment of error to be well taken and affirm the judgment below.

Todd is the owner of land located in Union Township, Butler County, Ohio. The land was originally zoned partly for single-family residences and partly for neighborhood business. Todd applied for a change of zoning to a residential planned-unit development, or what is commonly referred to as a "PUD." The township's zoning commission recommendation was, in effect, approved by the township's trustees when they failed to reject it unanimously. The appellees, Marie K. Jurkiewicz and Michele F. Gilbert, were among a group of citizens who circulated petitions for a referendum on the zoning change. The Butler County Board of Elections rejected the petitions based upon its determination that, pursuant to R.C. 519.021, no referendum was permitted when the zoning classification involved a change to a PUD.

Upon appeal by the petitioners, the appellees herein, the trial court overruled the board of elections, concluding that the relevant statutes, R.C. 519.12 and 519.021, permitted the use of a referendum to challenge the proposed zoning change.

Todd's first assignment of error asserts that the trial court erred by finding that the proposed zoning change was assailable by referendum. Todd contends that in 1989 the Ohio legislature specifically amended the pertinent statutory provision, R.C. 519.021, to provide that a zoning change to a PUD could not be subjected to referendum. The language upon which Todd relies is as follows:

"If standards are adopted for approval or disapproval of planned-unit developments, no planned-unit development shall be approved unless the plan for that development satisfies the standards of approval established under this section. No approval of a planned-unit development as being in compliance with the standards of approval established under this section, if any, shall be considered to be an amendment or supplement to the township zoning resolution for the purpose of section 519.12 of the Revised Code." R.C. 519.021.

R.C. 519.12(H), the particular code section which concerns amendments to zoning resolutions, provides for a referendum when a petition is presented with a certain number of signatures.

There are several difficulties with Todd's position, however. Prior to the 1989 amendments to R.C. 519.021, the Ohio Supreme Court had held in *Peachtree Dev. Co. v. Paul* (1981), 67 Ohio St.2d 345, 21 O.O.3d 217, 423 N.E.2d 1087, that the approval of a plat for a PUD was an amendment to the zoning resolution, hence a legislative act, and therefore subject to a referendum.[1] Curiously, in that part of the amending Act where the legislature set forth its purpose, Section 3, Am.Sub. S.B. No. 164, no mention is made of *Peachtree*. Rather, in Section 3 it is stated that the purpose of the amending Act is to supersede the holding in *Am. Aggregates Corp. v. Warren Cty. Commrs.* (1987), 39 Ohio App.3d 5, 528 N.E.2d 1266. The holding in *Am. Aggregates* concerned the power of the zoning authority to establish a PUD in an industrial zone; in other words, the holding in *Am. Aggregates* turned on whether establishment of a PUD in an industrial zone was a proper zoning tool. If the legislature had intended to supersede the broader and more important holding in *Peachtree*, that implementation of a PUD was a legislative act subject to referendum, it would seem that the legislature would have stated such in the particular section of the Act where it set forth its purpose.

The amended language which Todd relies upon is oblique at best, particularly when it refers not merely to the approval of a PUD but, rather, to the "approval of a planned-unit development *as being in compliance with the standards of approval* under this section." (Emphasis added.) R.C. 519.021. Earlier language in R.C. 519.021 indicates that the "standards of approval" referred to are those "to be used by the [zoning authority] in determining whether to approve or disapprove any planned-unit development." *Id.*

It is unclear, however, whether these "standards of approval" pertain to the initial decision to designate a plat a PUD, or whether they pertain to the variable criteria which are normally found in PUD regulations concerning such things as minimum acreage, lot size, and other aesthetic factors which are designed to give the zoning authority maximum flexibility in promoting certain design objectives over a single development unit. Such standards are commonly applied at

---

1. It should be noted that *Peachtree* involved a zoning amendment which was subject to referendum pursuant to R.C. 303.12 and 303.022, which govern referenda for zoning changes in counties as distinguished from townships. The separate statutory provisions for counties and townships are analogous, and Am.Sub.S.B. No. 164 amends both in almost identical fashion. Hence, the holding in *Peachtree* that establishment of a PUD is a legislative act subject to referendum is considered applicable both to counties and townships.

different stages of development after the submission of final development plans and subsequent variations in those plans.

In this regard, the appellees point out that the Union Township Zoning Resolution requires at first only the submission of a preliminary PUD plan to obtain a zoning classification change to a PUD; more detailed matters are determined in the subsequent preparation of "detailed Site Development Plan(s)." It is thus possible to interpret R.C. 519.021 as merely exempting from referendum the zoning authority's determinations whether a particular piece of property, once generally approved as a PUD, is then developed according to PUD standards, or "standards of compliance." Such an interpretation would leave intact *Peachtree's* holding that the initial decision to designate a particular piece of property as a PUD *is* a legislative act subject to referendum.

The preamble to Am.Sub.S.B. No. 164 does not offer any further clarification. The preamble states that the purpose of the amending Act was "to permit establishment and regulation of planned-unit developments in various types of integrated developments, * * * [and] to clarify that, *under certain circumstances*, decisions of the * * * [zoning authority] to approve planned-unit developments are not amendments or supplements to the county or township resolution subject to referendum." (Emphasis added.) Am.Sub.S.B. No. 164. From this language one can only infer that "under certain circumstances" the decision of the zoning authority to approve PUDs *is* subject to referendum. Unfortunately, the statute does not in any way delineate the circumstances under which a referendum is required and when it is not.

 Based on the foregoing analysis, we are not persuaded that the holding of *Peachtree* was meant to be superseded by R.C. 519.021. Given the obliqueness of the statutory language, and the failure of Section 3 of Am.Sub.S.B. No. 164 to make even an indirect reference to *Peachtree*, we conclude that the initial decision to designate a piece of property as a PUD is, as the Ohio Supreme Court determined in *Peachtree*, a legislative act which is subject to referendum. The purpose of R.C. 519.021 as amended, as best we can determine, is to exclude from referendum issues of whether, once a parcel is designated as a PUD, subsequent development proceeds in compliance with the standards set forth in the PUD regulation.

We recognize that the trial court, in reaching the same result as we do, interpreted R.C. 519.021 differently than we have here; however, it is well settled that a lower court can be correct for the wrong reasons. *Kraus v. Cincinnati* (Oct. 14, 1987), Hamilton App. No. C–860499, unreported, 1987 WL 18281.

Based upon the foregoing analysis, we find that Todd's first assignment of error is not well taken. Moreover, we also reject Todd's second assignment of

error asserting that the court of common pleas exceeded the scope of its authority in overruling the board of elections. The appeal to the court of common pleas was brought pursuant to R.C. Chapter 2506. R.C. 2506.04 provides that the court of common pleas may find that the order of the administrative agency is, *inter alia*, "illegal." The court of common pleas correctly determined that the board of elections had acted contrary to law when it refused to subject the zoning change to referendum.

*Judgment affirmed.*

DOAN, P.J., SHANNON and GORMAN, JJ., concur.

RUPERT A. DOAN, P.J., RAYMOND E. SHANNON, J., and ROBERT H. GORMAN, J., of the First Appellate District, sitting by assignment.