THE STATE EX REL. ZONDERS ET AL. *v.* DELAWARE
COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. Zonders v. Delaware Cty.
Bd. of Elections* (1994), 69 Ohio St.3d 5.]

(No. 94–347—Submitted March 14, 1994—Decided March 18, 1994.)

*Robert K. Lang,* for relators.

*W. Duncan Whitney,* Delaware County Prosecuting Attorney, and *David M. Gormley,* Assistant Prosecuting Attorney, for respondents Delaware County Board of Elections and its members.

*Lucas, Prendergast, Albright, Gibson & Newman* and *Robert E. Albright,* for intervening respondent Donald R. Kenney.

*Per Curiam.* Relators contend that the board of elections erred in its determination that the township trustees' approval of the application to rezone the property was not referendable pursuant to R.C. 519.021 because (1) the proposed development is not a planned-unit development ("PUD"), since it does not integrate a mixture of uses as required by R.C. 519.021, (2) R.C. 519.021 does not preclude a referendum with respect to rezoning of the land, (3) Section 1, Article II of the Ohio Constitution guarantees a right of referendum in this case, and (4) a person who files an application to rezone land from one classification to another is bound by the express terms agreed upon in the application. Because we concur with relators on the second issue, we hereby allow a writ of mandamus compelling the respondent board of elections to place the referendum on the May 3, 1994 ballot.[2]

Pursuant to R.C. 3501.11(K), each board of elections shall review, examine, and certify the sufficiency and validity of petitions. See, also, R.C. 3501.39(B) (board of elections shall accept any petition described in R.C. 3501.38 unless a written

2. See, also, 68 Ohio St.3d 1476, 629 N.E.2d 452.

protest is filed and, following a hearing, a determination is made that the petition violates any requirement established by law). The decision of a board of elections is final, and is subject to judicial review only for fraud, corruption, abuse of discretion, or a clear disregard of statutes or applicable legal provisions. *State ex rel. White v. Franklin Cty. Bd. of Elections* (1992), 65 Ohio St.3d 5, 8, 598 N.E.2d 1152, 1155; *State ex rel. Senn v. Cuyahoga Cty. Bd. of Elections* (1977), 51 Ohio St.2d 173, 175, 5 O.O.3d 381, 382, 367 N.E.2d 879, 880. There is no allegation of fraud or corruption here. Instead, relators contend that respondent board of elections abused its discretion and acted in clear disregard of the applicable statutes and law in determining that the action of the township trustees in rezoning the subject property from rural residential to planned residential is not subject to referendum.

Relators assert in their first proposition of law that respondent board of elections and its members erred in relying on R.C. 519.021 because the proposed development was not a PUD. Generally, R.C. 519.12(H) provides that an amendment of a zoning resolution approved by a board of township trustees shall be subject to referendum upon the filing of a petition:

"Such amendment adopted by the board shall become effective in thirty days after the date of such adoption unless within thirty days after the adoption of the amendment there is presented to the board of township trustees a petition, signed by a number of registered electors residing in the unincorporated area of the township or part thereof included in the zoning plan equal to not less than eight per cent of the total vote cast for all candidates for governor in such area at the last preceding general election at which a governor was elected, requesting the board of township trustees to submit the amendment to the electors of such area for approval or rejection at a special election to be held on the day of the next primary or general election * * *."

Nevertheless, R.C. 519.021 provides:

"A township zoning resolution or amendment adopted in accordance with this chapter may establish or modify planned-unit development regulations, which regulations shall only apply to property at the election of the property owner and which regulations may include standards to be used by the board of township trustees or, if the board so chooses, by the township zoning commission, in determining whether to approve or disapprove any planned-unit development. The regulations shall further the purpose of promoting the general public welfare, encouraging the efficient use of land and resources, promoting greater efficiency in providing public and utility services, and encouraging innovation in the planning and building of all types of development. Within a planned-unit development, the township zoning regulations need not be uniform, but may vary in order to accommodate unified development and to promote the public health,

safety, morals, and the other purposes of this section. If standards are adopted for approval or disapproval of planned-unit developments, no planned-unit development shall be approved unless the plan for that development satisfies the standards of approval established under this section. *No approval of a planned-unit development as being in compliance with the standards of approval established under this section, if any, shall be considered to be an amendment or supplement to the township zoning resolution for the purpose of section 519.12 of the Revised Code.*

*"As used in this section, 'planned-unit development' means a development which is planned to integrate residential, commercial, industrial, or any other use."* (Emphasis added.)

Relators assert that since the proposed development was solely composed of single-family detached dwellings, it failed to integrate residential use with "any other use" and thus was not a "PUD" as defined in R.C. 519.021. "In construing a statute, a court's paramount concern is the legislative intent in enacting the statute. In determining legislative intent, the court first looks to the language in the statute and the purpose to be accomplished." (Citations omitted.) *State v. S.R.* (1992), 63 Ohio St.3d 590, 594–595, 589 N.E.2d 1319, 1323. Words used in a statute must be taken in their usual, normal or customary meaning. R.C. 1.42; *Indep. Ins. Agents of Ohio, Inc. v. Fabe* (1992), 63 Ohio St.3d 310, 314, 587 N.E.2d 814, 817. The word "integrate" means "to form into a more complete, harmonious, or coordinated entity often by the addition or arrangement of parts or elements." Webster's Third New International Dictionary (1986) 1174. The word "use" means to "put into action or service; * * * employ." *Id.* at 2523. The proposed development specified a residential use, *i.e.*, single-family detached dwellings, and also provided nonresidential open space which contained no dwellings and included lakes or ponds and common areas for residents of the planned development.

Traditional zoning techniques commonly resulted in neighborhoods of like structures on essentially identical lots, creating "cookie cutter" subdivisions which did not provide sufficient open space. See, generally, 5 Rohan, Zoning and Land Use Controls (1994), Section 32.01[1]; 2 Anderson, American Law of Zoning (3 Ed.1986), Section 11.01. As a result of the problems associated with traditional zoning laws, PUDs were developed through local zoning ordinances and state enabling legislation. Rohan, *supra*, at 32–6. PUDs generally permit a mixture of land uses on the same tract, allow for a mix of different dwelling units, and provide a means of gathering, improving, and maintaining usable open space. *Id.*; see, also, Annotation, Zoning: Planned Unit, Cluster, or Greenbelt Zoning (1972), 43 A.L.R.3d 888. As the court has previously recognized:

"* * * PUD zoning permits those aspects of land development which are normally regulated by zoning to vary within a geographically defined area bearing a single zoning classification. *Within the PUD there may be found single-family dwellings*, multi-family units, schools, *open spaces*, recreational facilities *and other collateral nonresidential uses.*" (Emphasis added.) *Gray v. Trustees of Monclova Twp.* (1974), 38 Ohio St.2d 310, 311, 67 O.O.2d 365, 366, 313 N.E.2d 366, 367; cf., also, Hausser & Van Aken, Ohio Real Estate Practice and Law (1993) 1020, Section T 77.04 ("PUDs typically involve local planning and zoning techniques intended to facilitate the planned development of larger tracts in order to better use open space and encourage greater creativity in land use").

*Gray* recognized that open space, like either schools or recreational facilities, constitutes a planned collateral nonresidential use of the property. Although relators cite a litany of cases from other jurisdictions in support of their assertion that PUDs *require* a mixture of uses, none of the cases cited actually holds that an open space does not constitute a distinct "use" of the property and, indeed, most of these cases indicate only that PUDs "generally" or "usually" involve a mixture of residential, commercial, and/or industrial uses. See, *e.g., Gillis v. Springfield* (1980), 46 Ore.App. 389, 611 P.2d 355.

Effective July 26, 1989, the General Assembly enacted Am.Sub.S.B. No. 164, which, *inter alia,* amended R.C. 303.022 (county PUDs) and 519.021 (township PUDs) by adding the language at issue here. 143 Ohio Laws, Part I, 939. Former R.C. 519.021 had defined a PUD as "a development which is planned to integrate residential use with collateral uses, and in which lot size, setback lines, yard areas, and dwelling types may be varied and modified to achieve particular design objectives and make provision for open spaces, common areas, utilities, public improvements, and collateral nonresidential uses." 134 Ohio Laws, Part II, 2351. Pursuant to this prior version, it is manifest that PUDs included developments planned to integrate residential areas with open spaces. Although the current version of R.C. 519.021 is not as clear concerning what constitutes "any other use," the stated purpose of the 1989 amendment was specified in Section 3 of Am.Sub.S.B. No. 164:

"The purpose of this act is to supersede the holding in *American Aggregates Corp. v. Warren Cty. Commrs.* (1987), 39 Ohio App.3d 5 [528 N.E.2d 1266]. By enacting section 303.022 [the county equivalent of R.C. 519.021] of the Revised Code, the General Assembly intended, and the court should have so construed, that planned-unit developments may be used to integrate residential, commercial, industrial, or any other use." 143 Ohio Laws, Part I, 941–942.

*Am. Aggregates* merely held that the Warren County Commissioners lacked authority to impose a PUD on industrially zoned property. Therefore, the purpose of the amending language was to clarify that PUDs could integrate

residential and other uses, including industrial uses. That purpose is not contravened by construing the current version of R.C. 519.021 to additionally allow PUDs to integrate residential and *other* collateral nonresidential uses such as open spaces. Further, given the remedial purpose of PUDs to allow greater flexibility in zoning and to maintain open space, R.C. 519.021 must be liberally construed. R.C. 1.11; see, also, *State ex rel. Smith v. Etheridge* (1992), 65 Ohio St.3d 501, 605 N.E.2d 59. Liberally construed, the phrase "any other use" is sufficiently broad to encompass the open spaces here, which include lakes or ponds and common areas, and constitute a collateral nonresidential use of the property. *Gray, supra;* see, also, Rohan, *supra,* at 32–57, Section 32.05[1] (residential PUDs, known as "planned unit residential developments," are designed to avoid the adverse consequences of uniform housing development by, among other things, providing large expanses of open space). Therefore, respondent board of elections did not abuse its discretion or act in clear disregard of applicable law in determining that Kenney's proposed development constituted a PUD pursuant to R.C. 519.021. Consequently, relators' first proposition of law lacks merit.

Relators assert in their second proposition of law that respondent board of elections abused its discretion and acted in clear disregard of the applicable law by holding that R.C. 519.021 precluded a referendum on the rezoning of the subject property. R.C. 519.12(H) and Section 1203.14, Article XII of the Genoa Township Zoning Code provide that an amendment of a zoning resolution adopted by a board of township trustees is subject to referendum. R.C. 519.021 provides that "[n]o approval of a planned-unit development as being in compliance with the standards of approval established under this section, if any, shall be considered to be an amendment or supplement to the township zoning resolution for the purpose of section 519.12 of the Revised Code." Here, relators are not asserting that the Genoa Township Trustees' approval of Kenney's proposed PUD was erroneous because it did not comply with the planned residential district provisions of the Genoa Township Zoning Code; instead, relators attack the rezoning of the area from rural residential to planned residential. Nevertheless, R.C. 519.021 is ambiguous as to whether an "approval" of a PUD encompasses the act of rezoning incidental to such approval.

"Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to apply rules of statutory interpretation. However, where a statute is found to be subject to various interpretations, a court called upon to interpret its provisions may invoke rules of statutory construction in order to arrive at legislative intent." (Citations omitted.) *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 96, 573 N.E.2d 77, 80. R.C. 1.49 provides:

"If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:

"(A) The object sought to be attained;

"(B) The circumstances under which the statute was enacted;

"(C) The legislative history;

"(D) The common law or former statutory provisions, including laws upon the same or similar subjects;

"(E) The consequences of a particular construction;

"(F) The administrative construction of the statute."

Prior to 1989, R.C. 303.022 and 519.021 did not contain the language indicating that approval of PUDs as being in compliance with established standards would not be considered a referendable amendment or supplement to the township zoning resolution. Generally, the adoption of a zoning amendment, like the enactment of the original zoning ordinance, is a legislative act which is subject to referendum. See, generally, 1 Anderson, American Law of Zoning, *supra,* Sections 4.25 and 4.26. In *Peachtree Dev. Co. v. Paul* (1981), 67 Ohio St.2d 345, 351, 21 O.O.3d 217, 220–221, 423 N.E.2d 1087, 1092, quoting *Gray, supra,* 38 Ohio St.2d at 314, 67 O.O.2d at 367, 313 N.E.2d at 369, we held that the implementation of a PUD, as well as its creation, is a legislative act subject to referendum since the " 'action of the board in approving such a plat is the functional equivalent of traditional legislative zoning, even though the entire PUD area is covered by the same "nominal" zoning classification both before and after approval of the plat.' " See, also, *Singer v. Fairborn* (1991), 73 Ohio App.3d 809, 817, 598 N.E.2d 806, 811–812; *Kure v. N. Royalton* (1986), 34 Ohio App.3d 227, 230, 517 N.E.2d 1016, 1020. Other jurisdictions have adhered to this view. See, e.g., *Lutz v. Longview* (1974), 83 Wash.2d 566, 520 P.2d 1374; *Citizens for Quality Growth Petitioners' Commt. v. Steamboat Springs* (Colo.App.1990), 807 P.2d 1197.

As noted previously, effective July 26, 1989, the General Assembly enacted Am.Sub.S.B. No. 164, which added the language that is the subject of relators' second proposition. Again, the stated purpose of the Act was merely to overrule *Am. Aggregates,* which held that former R.C. 303.022 did not permit county commissioners to impose a PUD on land zoned for industrial use.

In *Jurkiewicz v. Butler Cty. Bd. of Elections* (1993), 85 Ohio App.3d 503, 506, 620 N.E.2d 146, 148, the Twelfth District Court of Appeals recently held that the 1989 amendment to R.C. 519.021 did not supersede this court's holding in *Peachtree:*

" * * * It is thus possible to interpret R.C. 519.021 as merely exempting from referendum the zoning authority's determinations whether a particular piece of

property, once generally approved as a PUD, is then developed according to PUD standards, or 'standards of compliance.' Such an interpretation would leave intact *Peachtree*'s holding that the initial decision to designate a particular piece of property as a PUD *is* a legislative act subject to referendum.

"The preamble to Am.Sub.S.B. No. 164 does not offer any further clarification. The preamble states that the purpose of the amending Act was 'to permit establishment and regulation of planned-unit developments in various types of integrated developments, * * * [and] to clarify that, *under certain circumstances,* decisions of the * * * [zoning authority] to approve planned-unit developments are not amendments or supplements to the county or township resolution subject to referendum.' (Emphasis added.) Am.Sub.S.B. No. 164. From this language one can only infer that 'under certain circumstances' the decision of the zoning authority to approve PUDs *is* subject to referendum. Unfortunately, the statute does not in any way delineate the circumstances under which a referendum is required and when it is not.

"Based on the foregoing analysis, we are not persuaded that the holding of *Peachtree* was meant to be superseded by R.C. 519.021. Given the obliqueness of the statutory language, and the failure of Section 3 of Am.Sub.S.B. No. 164 to make even an indirect reference to *Peachtree*, we conclude that the initial decision to designate a piece of property as a PUD is, as the Ohio Supreme Court determined in *Peachtree*, a legislative act which is subject to referendum." (Emphasis *sic.*)

We agree with the foregoing analysis. By so construing R.C. 519.021, it is possible to give effect to the citizens' R.C. 519.12 right to a referendum without impairing the R.C. 519.021 policy favoring the implementation of PUDs. Accordingly, R.C. 519.021 does not exempt the initial rezoning of property from one classification to another from the referendum provisions of R.C. 519.12 where the latter classification is a PUD.

In its decision denying a referendum, respondent board of elections attempted to distinguish *Jurkiewicz* on the basis that the zoning commission and township trustees in the instant case "employed a process whereby the land in question was designated as zoned for planned unit developments and approved a specific planned unit development all in one unified process." However, whether or not "one unified process" occurred is not dispositive. Rather, the crucial question is whether R.C. 519.021 precludes a referendum where a rezoning occurs, and for the reasons previously stated, that question should be answered in the negative. Finally, to the extent that the Fifth District Court of Appeals has ruled otherwise, see *Bd. of Liberty Twp. Trustees v. Rennob, Inc.* (Dec. 6, 1993), Delaware App. No. 93CAH02008, unreported, 1993 WL 535256, citing *State ex*

*rel. Hebenstreit v. Delaware Cty. Bd. of Elections* (Sept. 28, 1992), Delaware App. No. 92CA–D–09–029, unreported, those cases were wrongly decided.

In sum, the enactment of a new PUD classification that is not tied to any specific piece of property is a legislative act subject to referendum. *Peachtree, supra.* However, where specific property is already zoned as a PUD area, approval of subsequent development as being in compliance with the existing PUD standards is an administrative act which is not subject to referendum. R.C. 519.021; *Jurkiewicz, supra.* Finally, the application of preexisting PUD regulations to a specific piece of property which is zoned under a non-PUD classification (the situation here) effects a rezoning of the property and is thus a legislative act subject to referendum. *Peachtree, supra.* Therefore, relators' second proposition of law possesses merit and is sustained.

Relators' third proposition of law asserts that Section 1, Article II of the Ohio Constitution requires a referendum here. Since our disposition of relators' second proposition renders it unnecessary to reach this constitutional issue, it need not be considered. *State ex rel. Ruehlmann v. Luken* (1992), 65 Ohio St.3d 1, 4–5, 598 N.E.2d 1149, 1152. Analogously, relators' fourth proposition of law is moot.

Accordingly, based upon our disposition of relators' second proposition, a writ of mandamus is granted compelling respondent board of elections to place the petition for a township zoning referendum on the May 3, 1994 election ballot.

*Writ allowed.*

MOYER, C.J., A.W. SWEENEY, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

DOUGLAS, J., not participating.