THE STATE EX REL. COMMITTEE FOR THE REFERENDUM OF ORDINANCE
No. 3844–02 ET AL. *v.* NORRIS, CLERK, ET AL.

[Cite as *State ex rel. Commt. for the Referendum of Ord. No.*
*3844–02 v. Norris,* 99 Ohio St.3d 336, 2003-Ohio-3887.]

(No. 2003–0085—Submitted June 3, 2003—Decided August 6, 2003.)

**Per Curiam.**

{¶ 1} In 1999, respondent North Ridgeville City Council enacted Chapter 1279 of the North Ridgeville Codified Ordinances, which established a new zoning classification known as Planned Community Development ("PCD") District. The specified purposes of the PCD classification were "[t]o encourage skillful planning of parts of the community in accordance with the objectives of the Master Plan; to provide for the utilization of design criteria in the arrangements of buildings related to open spaces, * * * to utilize topography and other site features to their best advantage to obtain creative and coordinated designs" and "to enhance the City's growth in a unified manner."

{¶ 2} On October 2, 2000, the city council enacted Ordinance No. 3621–2000, which approved a preliminary development plan for a 640–acre PCD known as Waterbury. Ordinance No. 3621–2000 rezoned the Waterbury property from its previous R–1 zoning classification to PCD. North Ridgeville and its city council

changed the zoning map to reflect the zoning change to PCD for the Waterbury property.

{¶ 3} On September 16, 2002, the city council enacted Ordinance Nos. 3844–2002 and 3845–2002, which adopted the final development plans and final plats for, respectively, the Andover and Chaddwyck portions of the Waterbury PCD. The city council stated in these ordinances that the city engineer had reviewed and approved the site plans and plats and found them to fully comply with his recommendations and applicable city ordinances.

{¶ 4} Relators, the Committee for the Referendum of Ordinance No. 3844–02, the Committee for the Referendum of Ordinance No. 3845–02, and the committee members, circulated petitions for referenda on these ordinances. They requested that the ordinances be submitted to North Ridgeville electors "for their approval or rejection at the general election to be held on the 4th day of November, 2003."

{¶ 5} On October 16, 2002, relators filed the signed petitions with respondent North Ridgeville Clerk of Council Chuck Norris. On October 29, Norris certified to city council that both referendum petitions contained a sufficient number of valid signatures.

{¶ 6} At the November 4, 2002 council meeting, North Ridgeville Law Director Eric H. Zagrans advised the council that relators' referendum petitions were invalid. Zagrans stated that the petitions contained the incorrect election date of November 4, 2003, instead of the May 2003 primary election and that the ordinances were administrative actions that were not subject to referendum. In a November 6 legal memorandum, Zagrans reiterated these grounds and concluded that council had no duty to act on the petitions or submit the ordinances to the electorate for a vote. Relators responded with a contrary legal opinion and a demand that Zagrans institute a legal proceeding to compel the city council and Norris to submit the referendum petitions for the ordinances to the North Ridgeville electorate. On December 2, Zagrans rejected relators' demand.

{¶ 7} The city council neither repealed the ordinances nor submitted them to the electorate for approval.

{¶ 8} On January 15, 2003, after council failed to submit the ordinances to the electorate, relators filed this action for a writ of mandamus. Relators seek to compel respondents, North Ridgeville, the city council, and the clerk of council, to submit North Ridgeville Ordinance Nos. 3844–2002 and 3845–2002 to the Lorain County Board of Elections for placement on the ballot at the next regular election. Relators also moved to expedite consideration if the court agreed with respondents that the pertinent election was the May 6, 2003 primary election. Sugar Chestnut, L.L.C., Pulte Homes of Ohio, L.L.C., and Whitlatch & Co. moved to intervene as respondents. The latter two had purchased the property that is the subject of the ordinances and had begun constructing homes and

installing streets in accordance with the approved development plans. Sugar Chestnut owns property in the Waterbury PCD.

{¶ 9} We denied relators' motion to expedite, granted the motion to intervene, and granted an alternative writ. *State ex rel. Commt. for the Referendum of Ordinance 3844-02 v. Norris,* 98 Ohio St.3d 1473, 2003-Ohio-904, 784 N.E.2d 707.

{¶ 10} This cause is now before the court for its consideration of relators' motion for oral argument and the merits.[1]

## Mandamus

{¶ 11} Relators request a writ of mandamus to compel respondents to submit the referendum petitions to the board of elections for placement of ordinances on the ballot for the next regular election. In order to be entitled to the requested writ, relators must establish a clear legal right to have respondents submit the referendum petitions to the board of elections for placement on the ballot, a corresponding clear legal duty on the part of respondents to do so, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Miles v. McSweeney,* 96 Ohio St.3d 352, 2002-Ohio-4455, 775 N.E.2d 468, ¶ 13.

{¶ 12} Respondents claim that the referendum petitions are defective and that relators' mandamus action is barred by laches. The law director claimed that the referendum petitions were defective because (1) they lacked a proper election date, and (2) they sought referenda on administrative actions.

## Election Date

{¶ 13} Section 13.2, Article XIII of the North Ridgeville Charter requires the city council to either repeal an ordinance that is the subject of a timely filed referendum petition after a finding of sufficiency or submit it to electors at the next regular election:

{¶ 14} "If Council fails to repeal said ordinance or resolution * * * the Council shall submit it to a vote of the electors at the *next regular election* occurring more than seventy-five (75) days after the filing of such petition." (Emphasis added.)

{¶ 15} Under Section 14.1, Article XIV of the North Ridgeville Charter, a regular municipal election is held on the first Tuesday after the first Monday in November in odd-numbered years. This charter definition is identical to the statutory definition of "regular municipal election." R.C. 3501.01(B); see, also, Section 14.6, Article XIV, North Ridgeville Charter ("Except as otherwise

---

1. We deny relators' request for oral argument. The parties' briefs are sufficient to resolve this case. See *State ex rel. United States Steel Corp. v. Zaleski,* 98 Ohio St.3d 395, 2003-Ohio-1630, 786 N.E.2d 39, ¶ 6.

provided in this Charter, all elections shall be held and conducted and the results thereof ascertained and certified as provided by the general laws of Ohio and by the election authorities therein provided for").

{¶ 16} Therefore, the next regular election occurring more than 75 days after the filing of the referendum petitions is the November 4, 2003 election. Because the petitions specified this election date, they were not defective on this basis. "Municipal charters must be construed to give effect to all separate provisions and to harmonize them with statutory provisions whenever possible." *State ex rel. Ditmars v. McSweeney* (2002), 94 Ohio St.3d 472, 477, 764 N.E.2d 971.

## Applicability of Referendum to Legislative and Administrative Actions

{¶ 17} The primary issue raised by this case is whether the city council's enactment of Ordinance Nos. 3844–2002 and 3845–2002 constituted legislative or administrative action.

{¶ 18} Section 1f, Article II of the Ohio Constitution provides initiative and referendum power only on those questions that municipalities "may now or hereafter be authorized by law to control by *legislative action*." (Emphasis added.) Conversely, "[p]ursuant to Section 1f, Article II of the Ohio Constitution, actions taken by a municipal legislative body, whether by ordinance, resolution, or other means, that constitute *administrative action*, are not subject to referendum proceedings." (Emphasis added.) *Buckeye Community Hope Found. v. Cuyahoga Falls* (1998), 82 Ohio St.3d 539, 697 N.E.2d 181, paragraph two of the syllabus.

{¶ 19} "The test for determining whether the action of a legislative body is legislative or administrative is whether the action taken is one enacting a law, ordinance or regulation, or executing or administering a law, ordinance or regulation already in existence." *Donnelly v. Fairview Park* (1968), 13 Ohio St.2d 1, 42 O.O.2d 1, 233 N.E.2d 500, paragraph two of the syllabus.

{¶ 20} In applying this test to traditional zoning cases that do not involve a planned-unit development ("PUD"), we have held that the following are administrative acts, which are not subject to referendum. Id., paragraph three of the syllabus (failure or refusal of a municipal council to approve a plan for resubdivision of land that meets terms of a previously adopted zoning ordinance); *Buckeye Community*, 82 Ohio St.3d 539, 697 N.E.2d 181, paragraph three of the syllabus (passage by city council of an ordinance approving a site plan for development of land pursuant to existing zoning and other applicable regulations); *C & D Partnership v. Gahanna* (1984), 15 Ohio St.3d 359, 362, 15 OBR 480, 474 N.E.2d 303 (failure or refusal of city council to approve a subdivision plat).

Planned–Unit Developments

{¶ 21} "Traditional zoning techniques commonly resulted in neighborhoods of like structures on essentially identical lots, creating 'cookie cutter' subdivisions which did not provide sufficient open space." *State ex rel. Zonders v. Delaware Cty. Bd. of Elections* (1994), 69 Ohio St.3d 5, 8, 630 N.E.2d 313, citing 5 Rohan, Zoning and Land Use Controls (1994), former Section 32.01[1], see (1999) Volume 2, 12–1 and Section 12.01[1]. Because of these problems, PUDs, which generally permit a mixture of land uses on the same property, were developed through state enabling legislation and local zoning ordinances. Id. In a PUD, the property is usually developed to accommodate different types of residential uses as well as commercial, industrial, and other uses, and development standards "are relaxed in order to achieve better site design, use relationships, and preservation of open spaces and natural topography." Meck & Pearlman, Ohio Planning and Zoning Law (2003) 503, T 11.24. The preeminent purpose of PUD zoning "is to introduce an element of flexibility into the zoning of large tracts so that a mixture of uses can be employed and open spaces preserved." *Peachtree Dev. Co. v. Paul* (1981), 67 Ohio St.2d 345, 354, 21 O.O.3d 217, 423 N.E.2d 1087. "In essence, a PUD merges elements of zoning and subdivision control." Meck & Pearlman, Ohio Planning and Zoning Law, supra, at 503, T 11.24. The PCD zoning classification enacted by the North Ridgeville City Council is a PUD.

Application of Referendum to Acts Involving Planned–Unit Developments: *Gray, Peachtree,* and *Zonders*

{¶ 22} On several occasions, we have considered the application of referendum to various acts by local legislative bodies concerning PUDs.

{¶ 23} In *Gray v. Trustees of Monclova Twp.* (1974), 38 Ohio St.2d 310, 67 O.O.2d 365, 313 N.E.2d 366, syllabus, we held that an "[a]ction by a board of township trustees adopting an amendment to a previously approved planned unit development plat is legislative action." In so holding, we construed a township zoning resolution that required that specific development plans be disclosed on a plat submitted to the board of trustees for approval. Id., 38 Ohio St.2d at 311–312, 67 O.O.2d 365, 313 N.E.2d 366. The resolution provided that the zoning regulations be amended once the plat was approved. We held that under these local zoning laws, the board's approval of a plat or an amendment of a plat constituted legislative acts because they in effect rezoned the property:

{¶ 24} "Under Monclova's zoning laws, the location of buildings and yard requirements must appear on a PUD plat submitted to the board of trustees for approval. Once approved by the board and filed with the county recorder, the specific development plans disclosed on the plat become part of the township's zoning regulations; that is, the developer must, unless an amendment is granted, comply with these plans. Section 9–A–1 of the zoning resolution, *supra.* Hence,

*the action of the board in approving such a plat is the functional equivalent of traditional legislative zoning, even though the entire PUD area is covered by the same 'nominal' zoning classification both before and after approval of the plat.* Similarly, the approval by the township trustees of an application to amend a previously approved PUD plat is equivalent to legislative rezoning, even though there is no change in the nominal zoning." (Emphasis added and footnote omitted.) Id., 38 Ohio St.2d at 314, 67 O.O.2d 365, 313 N.E.2d 366.

{¶ 25} We further observed that the approval of the PUD plat pursuant to Monclova's zoning resolution was a legislative act because the specific zoning restrictions in the PUD area were ascertainable only upon approval of the plat:

{¶ 26} "The overall zoning classification in a PUD area can be termed 'nominal' because it does not, by itself, indicate the specific zoning restrictions in the area. These restrictions are ascertainable only by referring to the approved plats for the development." Id., 38 Ohio St.2d at 314, 67 O.O.2d 365, 313 N.E.2d 366, fn. 4.

{¶ 27} In *Peachtree,* 67 Ohio St.2d 345, 21 O.O.3d 217, 423 N.E.2d 1087, we held that a board of county commissioners' approval of a developer's PUD request and plan constituted a referendable, legislative act even though the property retained a residential zoning classification. In so holding, we recognized that the implementation of a PUD, as well as its creation, is a legislative act:

{¶ 28} "[T]he Court of Appeals committed reversible error in failing to rule that the *implementation* of the [PUD], as well as its creation, is a legislative act, which is subject to a referendum. Applying the aforementioned theory to the facts at bar, the conclusion is inescapable that the Board of County Commissioners of Hamilton County, in approving Resolution No. 575, acted in a legislative manner since the board's action was the functional equivalent of altering the zoning classification of a sizeable section of Colerain Township.

{¶ 29} "That the board's attempt to implement [the developer's PUD] is tantamount to rezoning the area is readily apparent from the changes in the permitted uses associated with the [PUD]. * * *

{¶ 30} "As a practical matter, the implementation of the [PUD] effects a rezoning change of this area. When the board of county commissioners approved the [PUD], the preexisting Residence A–2 classification remained in name only." (Emphasis sic.) Id., 67 Ohio St.2d at 351–352, 21 O.O.3d 217, 423 N.E.2d 1087.

{¶ 31} In *Zonders,* 69 Ohio St.3d 5, 630 N.E.2d 313, we held that the application of existing PUD regulations to a specific parcel zoned under a non-PUD classification constitutes a rezoning of the parcel, which is a legislative act subject to referendum. We analyzed relevant statutes and precedent that included *Peachtree* and summarized different acts and whether they were subject to referendum:

{¶ 32} "In sum, the enactment of a new PUD classification that is not tied to any specific piece of property is a legislative act subject to referendum. However, *where specific property is already zoned as a PUD area, approval of subsequent development as being in compliance with the existing PUD standards is an administrative act which is not subject to referendum.* Finally, the application of preexisting PUD regulations to a specific piece of property which is zoned under a non-PUD classification (the situation here) effects a rezoning of the property and is thus a legislative act subject to referendum." (Emphasis added and citations omitted.) Id., 69 Ohio St.3d at 13, 630 N.E.2d 313.[2]

### Application of Precedent to North Ridgeville Ordinance Nos. 3844–2002 and 3845–2002

{¶ 33} Applying the foregoing principles to the ordinances here, these ordinances merely execute or administer PUD ordinances already in existence. *Donnelly*, 13 Ohio St.2d 1, 42 O.O.2d 1, 233 N.E.2d 500, paragraph two of the syllabus. That is, the PUD concept was created by the adoption of the PCD classification in 1999. The PUD was executed or implemented when it was applied to the Waterbury property, including the property at issue here, in 2000 by the enactment of Ordinance No. 3621–2000. At that time, the zoning was changed on the property from R–1 to PCD, and the preliminary development plan was approved. When the city council enacted Ordinance Nos. 3844–2002 and 3845–2002 in 2002, it applied the preexisting PUD regulations and the previously approved preliminary development plan to the property to determine whether the final development plan and plat complied with these requirements. See Sections 1279.09 and 1279.10 of Codified Ordinances of North Ridgeville.

{¶ 34} Like the site-plan approval held to be administrative in *Buckeye Community* and the final-subdivision-plat approval found to be administrative in *C & D Partnership*, Ordinance Nos. 3844–2002 and 3845–2002 similarly approved a site plan and applied preexisting subdivision regulations.

{¶ 35} Moreover, this conclusion is consistent with *Peachtree* and *Gray*. In *Zonders*, 69 Ohio St.3d at 13, 630 N.E.2d 313, we expressly determined that where, as here, "specific property is already zoned as a PUD area, approval of

---

2. *Zonders* and *Peachtree* predated 1997 amendments to the PUD statutes for counties and townships that provide the following for some PUD designations: "After the designation of the property as a planned-unit development on the zoning map [and the simultaneous adoption of regulations that will apply only to that planned-unit development], any approval or disapproval of subsequent use or development of property in a planned-unit development as being in compliance with regulations established as authorized by this division shall not be considered to be an amendment or supplement to a [county or township] zoning resolution * * *, but may be appealed pursuant to Chapter 2506. of the Revised Code." R.C. 303.022 and 519.021 (first bracketed phrase appears only in R.C. 519.021).

subsequent development as being in compliance with the existing PUD standards is an administrative act which is not subject to referendum." In 2000, the city council approved the preliminary development plan and applied the PUD zoning to the Waterbury property, so the 2002 council approval of the final development plan as being in compliance with existing PUD standards was administrative and not referendable. In *Peachtree* and *Gray,* the acts found to be legislative and referendable effected a zoning change to the properties. But the zoning change to the property here was made in 2000 when the PCD classification was applied to the Waterbury property.

### *Crossman*

{¶ 36} Relators claim that notwithstanding *Zonders* and other cases that support a finding that the ordinances are nonreferendable, our decision in *Crossman* mandates that the ordinances be subject to referendum.

{¶ 37} In *State ex rel. Crossman Communities of Ohio, Inc. v. Greene Cty. Bd. of Elections* (1999), 87 Ohio St.3d 132, 717 N.E.2d 1091, we held in a plurality opinion that a city council's resolution adopting a final development plan for a PUD constituted a legislative, and thus a referendable, act. In so holding, we cited *Zonders, Peachtree, Gray,* and *Donnelly.* Id., 87 Ohio St.3d at 136–137, 717 N.E.2d 1091.

{¶ 38} Nevertheless, the precedent cited in *Crossman* warrants a contrary finding. *Crossman* did not purport to overrule this precedent. Notably, the plat-approval language of "functional equivalent of traditional legislative zoning" in *Crossman* is taken from our previous decision in *Gray,* 38 Ohio St.2d at 314, 67 O.O.2d 365, 313 N.E.2d 366, where the township zoning resolution specifically provided that the act of approving a PUD plat rezoned the property. The ordinances here do not so provide.

{¶ 39} The intervening respondents note that the *Crossman* holding has been criticized as recognizing an erroneous PUD exception to the *Donnelly* test for determining whether an action by a local legislative authority is subject to referendum: ﹢

{¶ 40} "[*Crossman*] is incorrect, in the authors' opinion. *Because of the technical detail and discretionary judgments involved in its review, the approval of a final development plan, in practice, is equivalent to approval of a subdivision plat, an action that the Ohio Supreme Court has held to be administrative, where the action was a final appealable order.* * * * If approval of a final plat of a subdivision and a site plan are administrative actions, how can approval of a final development plan of a planned development be anything else but administrative as well, once the overall framework has been established by a preliminary development plan and the zoning change? The *Crossman* decision considerably

blurs the line between what is legislative and what is administrative. A better approach in *Crossman* would have been to separate the policy-making question of rezoning (the property had been previously rezoned from agriculture to planned residential development) from the question of the policy-effectuating approval of the final development plan, each of which constitutes an action of a different character. *By effectively lumping the two actions together, the Ohio Supreme Court seems to be carving out an odd exception that administrative or implementing actions are not subject to referendum, except when they involve a planned unit development.*" (Emphasis added.) Meck & Pearlman, Ohio Planning and Zoning Law, supra, at 510, T 11.26.

{¶ 41} Based on the foregoing authorities, we now overrule *Crossman* to the extent that it is inconsistent with this opinion. We did not intend in *Crossman* to carve out an exception to existing precedent.

### Conclusion

{¶ 42} Therefore, consistent with *Zonders, Peachtree, Donnelly,* and *C & D Partnership,* we hold that the ordinances constitute nonreferendable, administrative acts, and we deny the writ. By so holding, we need not address respondents' alternative argument that laches barred this mandamus action.

Writ denied.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

Phillips & Co., L.P.A., and Gerald W. Phillips, for relators.

Eric H. Zagrans, North Ridgeville Law Director, for respondents.

Berns, Ockner & Greenberger, L.L.C., Sheldon Berns and Benjamin J. Ockner, for intervening respondents.