DECISION AND JOURNAL ENTRY
{¶ 1} Appellant City of Tallmadge ("Tallmadge"), appeals from the judgment of the Summit County Court of Common Pleas, ordering the issuance of a conditional zoning certificate to Appellee Gross Builders for the construction of a planned unit development ("PUD"). This Court affirms.
 {¶ 2} Under Tallmadge's Codified Applications ("Tall. Ord."), city property is divided into nine use districts. Tall. Ord. 1133.01(61) defines a PUD as "a group or cluster of three or more two-family or multi-family dwellings developed primarily for the purpose of residential dwellings and having common courts, open spaces, common recreational facilities or other accessory use." PUDs are permitted in residential districts as a conditional use pursuant to Tall. Ord. 1189.05(118). The City adopted a comprehensive plan in 1991 and subsequently adopted an updated version of this comprehensive plan in 1997.
 {¶ 3} In January 2004, Gross Builders filed an application with the City for the approval and grant of a conditional zoning permit for a PUD in an R-2, residential zoned district. Pursuant to Tall. Ord. 1154.02, PUDs are conditionally permitted uses of properties within R-2 districts. Upon submission of all the required documentation, the proposal was referred to Tallmadge's Planning and Zoning Commission ("P Z"). P Z scheduled a public hearing on the matter for April 1, 2004. At the hearing, Gross Builders presented its plan and council members, the mayor, members of P Z and residents voiced their opinions regarding the proposal. Following the public hearing, P Z recommended that the City Council reject Gross Builders' application for a conditional zoning certificate.
 {¶ 4} Because Gross Builders expressed concern that it did not have a sufficient opportunity to address its proposal at the April 1, 2004 meeting, Tallmadge City Council's Planning and Zoning Committee held a meeting on April 19, 2004. At the April 19, 2004 meeting, Tallmadge's Planning and Zoning Committee heard an extensive presentation from Gross Builders regarding the proposed project's compliance with Tallmadge's zoning applications. In its discussion of Gross Builders' application, the City Council and Mayor explained that they primarily opposed the application because the PUD did not conform to the City's comprehensive plan.
 {¶ 5} On May 10, 2004, the City Council's Planning and Zoning Committee voted 3-0 to recommend rejection of Appellant's proposed application. At its May 13, 2004 meeting, the City Council followed that recommendation and unanimously rejected the proposed application.
 {¶ 6} On June 10, 2004, pursuant to R.C. 2505 and R.C. 2506, Gross Builders timely filed an administrative appeal of the City Council's decision to the Summit County Court of Common Pleas. The court referred the matter to Magistrate Shoemaker.
 {¶ 7} On October 27, 2004, Magistrate Shoemaker entered his decision, in which he concluded that the actions of Tallmadge City Council in denying Gross Builders' application to have issued to it a conditional zoning certificate for the construction of a PUD was illegal and represented an arbitrary, capricious or unreasonable action of the City and its Council, which was unsupported by the preponderance of substantial, reliable and probative evidence. The Magistrate noted that a political subdivision has full legal authority to incorporate a comprehensive plan into its zoning code such that applicants would be required to comply with such a plan in addition to the zoning code but, that there was no evidence that Tallmadge ever sought to do so. The Magistrate ordered Tallmadge to issue a conditional zoning certificate to Gross Builders and permitted Gross Builders to proceed on the construction of the PUD.
 {¶ 8} Tallmadge filed objections to the Magistrate's opinion as well as a motion to dismiss for lack of subject matter jurisdiction in which it argued that the Council's action was legislative not administrative and that the court lacked jurisdiction under R.C. 2506.01 to hear the appeal. The trial court ultimately affirmed the Magistrate's recommendation, although it never expressly ruled on either Tallmadge's motion to dismiss. The trial court also held that Tallmadge acted arbitrarily, capriciously or unreasonably when it rejected Gross Builders' application.
 {¶ 9} Appellant has timely appealed the trial court's decision, asserting four assignments of error. Because Appellant's first two assignments of error are interrelated, we will address them together.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED WHEN IT FAILED TO FIND THAT TALLMADGECITY COUNCIL ACTED LEGISLATIVELY IN REJECTING APPLICATION40-2004."
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED WHEN IT FAILED TO FIND THAT THEREJECTION OF TALLMADGE APPLICATION 40-2004 DID NOT RESULT FROM AQUASI-JUDICIAL PROCEEDING."
 {¶ 10} In Appellant's first two assignments of error, it argues that the trial court erred by failing to dismiss the case on the basis of lack of subject matter jurisdiction. Specifically, Appellant contends that the court lacks subject matter jurisdiction to hear the appeal under R.C. 2506.01 because the City Council acted legislatively and because the City Council's rejection did not result from a quasi-judicial proceeding. We disagree.
 {¶ 11} The standard of review for a motion to dismiss pursuant to Civ.R. 12(B)(1) is "whether any cause of action cognizable by the forum has been raised in the complaint." Stateex rel. Bush v. Spurlock (1989), 42 Ohio St.3d 77, 80. An appellate court's review of a motion to dismiss predicated on Civ.R. 12(B)(1) is de novo, and therefore it must review the issues independently of the trial court's decision. CrestmontCleveland Partnership v. Ohio Dept. of Health (2000),139 Ohio App.3d 928, 936.
 {¶ 12} Under R.C. 2506.01, administrative actions of administrative officers and agencies resulting from a quasi-judicial proceeding are appealable to the common pleas court. See M.J. Kelley Co. v. Cleveland (1972),32 Ohio St.2d 150, paragraph one of the syllabus. However, it is well established that a trial court does not have the authority to hear appeals based on legislative acts because such acts are not appealable pursuant to R.C. 2506.01, and thus a trial court lacks subject matter jurisdiction over those matters. Moraine v. Bd.of County Commrs. (1981), 67 Ohio St.2d 139, 144; see, also,Thomas v. Beavercreek (1995), 105 Ohio App.3d 350, 354.
 {¶ 13} In determining whether the trial court erred in failing to find that the Council acted legislatively and that the Council did not conduct a quasi-judicial proceeding, this Court must determine if the Council's rejection of Gross Builders' application was (1) a legislative act resulting from (2) a quasi-judicial proceeding. The test is "whether the action taken is one enacting a law, ordinance or regulation, or executing or administering a law, ordinance or regulation already in existence." Donnelly v. Fairview Park (1968), 13 Ohio St.2d 1, paragraph two of the syllabus. Consequently, if the action creates a law, it is legislative and subject to referendum, but if the action executes or administers an existing law, the action is administrative and appealable. Id.; see, also, BuckeyeCommunity Hope Found. v. Cuyahoga Falls (1998),82 Ohio St.3d 539, 544.
1. Legislative or Administrative Action
 {¶ 14} We will first analyze whether the Council's rejection of Gross Builders' application was a legislative or administrative action. In applying the above-cited test, Appellant contends that the Council's actions were legislative and thus were not subject to appeal. Tallmadge specifically contends that it could not approve applications for conditionally permitted uses requested in a PUD without taking legislative action.
 {¶ 15} In Donnelly, the court clearly articulated the difference between legislative and administrative zoning actions:
"Of course, the adoption or amendment of a zoning regulation or application is a legislative act, but the failure or refusal to approve a resubdivision of land coming within the terms of a zoning regulation or application already adopted and in existence is an administrative matter." Donnelly, 13 Ohio St.2d at 3.
 {¶ 16} A review of relevant Ohio Supreme Court cases, as applied to the instant matter, demonstrates that the action taken by the Council in rejecting Gross Builders' application was an administrative action.
 {¶ 17} Tallmadge cites Gray v. Trustees of Monclova Twp.
(1974), 38 Ohio St.2d 310, in support of its contention that its actions were legislative in nature. Monclova's zoning code required applicants to identify specific development plans on the plats submitted to the board for approval. The code further provided that the zoning regulations must be amended once the board approved the plans. The court held that the action of the township in adopting an amendment to a previously approved PUD constituted legislative zoning even though the entire PUD area was covered by the same zoning classification before and after approval of the plat because the board's actions effectively rezoned the property.
 {¶ 18} Gray is distinguishable from the within matter. Here, Tallmadge's zoning code allows PUDs "in any residential zoning district." Tall. Ord. 1189.05(118)(C)(1). Moreover, Tallmadge's zoning code contains no provision requiring amendment of zoning regulations upon approval of development plans. Consequently, neither the zoning classification for the property nor the zoning code would be altered by approval of an application for a PUD and the Council's actions do not constitute legislative zoning under Gray.
 {¶ 19} In Peachtree Dev. Co. v. Paul (1981),67 Ohio St.2d 345, a developer sought to develop a certain tract of land as a Community Unit Plan ("CUP"), which would require the land to be rezoned from Residence A-2 to CUP.[1] The developer submitted its plan for the use and development of the land to the Board of County Commissioners of Hamilton County. The board approved the developer's CUP request, and referendum petitions were circulated and approved, thus placing the approval of the CUP on the ballot. The developer then filed an action in the common pleas court seeking, inter alia, a declaration that the resolution approving the CUP was not subject to referendum. The trial court held that CUP was a legislative act that was subject to a referendum, but the appeals court held that the county commissioners' approval of the CUP was an administrative action, and as such, not subject to referendum. The Ohio Supreme Court agreed with the trial court, and held that the implementation of a CUP or a PUD, as well as its creation, is a legislative act subject to referendum because the board's approval of the CUP was the functional equivalent of altering the zoning classification. Id. at 351.
 {¶ 20} Peachtree is also inapposite. The acts found to be legislative in Peachtree as in Gray were those that effected a zoning change to the property. As we noted, no zoning change would result from Tallmadge's approval of development plans for a PUD. Tallmadge's approval of the application for a PUD would not create a PUD but would merely constitute authorization of such development. Such authorization does not amount to a legislative act under Peachtree.
 {¶ 21} Tallmadge also cited the holding from State ex rel.Zonders v. Delaware Cty. Bd. of Elections (1994),69 Ohio St.3d 5, 13, in support of its arguments. In Zonders, the court held that while the initial decision to designate property as a PUD is a legislative act, "where specific property is already zoned as a PUD area, approval of subsequent development as being in compliance with the existing PUD standards is an administrative act which is not subject to referendum." Id.
 {¶ 22} Tallmadge erroneously cited Zonders in support of its contention that its actions were legislative. Under the guidance of Zonders, we confirm that Tallmadge acted legislatively when it decided to conditionally permit PUDs in "any residential zoning district," but acts administratively, as in this matter, when it determines whether a development complies with its standards for development of PUDs. Tall. Ord. 1189.05(118)(C)(1).
 {¶ 23} The Supreme Court reviewed its decisions in Gray,Peachtree, and Zonders in State ex rel. Commt. for theReferendum of Ordinance No. 3844-02 v. Norris,99 Ohio St.3d 336, 2003-Ohio-3887. In Norris, North Ridgeville enacted applications which established PUD districts and subsequently enacted applications which adopted the final development plans for portions of the PUD. Opponents of the PUD sought to have the applications placed on a general election ballot for approval and the council refused the request. The court held that although the enactment of the applications was a legislative action, subject to referendum, the city council acted administratively when it executed or administered PUD applications already in existence. The court concluded that its decision in Norris was consistent with its holdings in Gray, Peachtree and Zonders:
"In Zonders, we expressly determined that where, as here, `specific property is already zoned as a PUD area, approval of subsequent development as being in compliance with the existing PUD standards is an administrative act which is not subject to referendum.' * * * In Peachtree and Gray, the acts found to be legislative and referendable effected a zoning change to the properties. But the zoning change to the property here was made in 2000 when the PCD classification was applied to the Waterbury property." (Citations omitted). Id. at ¶ 35.
 {¶ 24} Appellant's contention that the Norris decisionsupports its argument reflects an apparent misreading of the case. Norris and its review of pertinent Ohio Supreme Court case law, actually weighs against Appellant's argument that its actions were legislative in nature and demonstrates that Tallmadge's actions in applying its existing zoning laws to an application for a PUD is an administrative action.
 {¶ 25} The conclusion that Tallmadge's actions were administrative in nature is also supported by two recent decisions of this Court. In Antush v. North Ridgeville, 9th Dist. Nos. 8161, 02CA008161, 02CA008169, 02CA008192, 2003-Ohio-3164, we held that the City Council's approval of final development plans was administrative in nature, where the council implemented its planned community development (PCD) zoning in approving final development plans for a PCD which was already zoned as PCD zoning. Although this Court held that the trial court erroneously dismissed the appeal on the basis that the Council's actions were legislative in nature, we held that the Appellants lacked standing to sue because they failed to supply the court with the minutes from the hearings before the council. See also Hickory Street Coalition v. Akron, 9th Dist. No. 21738, 2004-Ohio-2246 (finding that the City Council engaged in administrative action, not legislative zoning, where it executed existing law in granting a conditional use permit).
 {¶ 26} Under Tallmadge's zoning code, a person seeking to construct a PUD must obtain a conditional use permit prior to construction. It is not necessary, however, for property located in an R-2 residential district to be rezoned before a PUD can be constructed. Tall. Ord. 1189.05(118)(C)(1) and (3)(j) specifically permit PUDs in "any residential zoning district" and further provides that PUDs "should not be concentrated in one area of the City but should be scattered throughout the community."
 {¶ 27} In reaching its conclusion, the Council took no action which would be construed as legislative in nature. Indeed, the Council neither adopted nor amended any zoning regulations, but merely determined that Gross Builders' application did not conform to the City's comprehensive plan. The Council based its decision on applications governing PUD applications which were already in existence and its existing comprehensive plan. Because the Ohio Supreme Court has specifically held that "[t]he decision to deny an application for a conditional use is clearly administrative in nature," we find that the Council's actions were also administrative in nature and thus subject to appeal under R.C. 2506.01. Community Concerned Citizens, Inc. v. UnionTwp. Bd. of Zoning Appeals (1993), 66 Ohio St.3d 452, 456. Consequently, we overrule Tallmadge's first assignment of error.
2. Quasi-Judicial Proceeding
 {¶ 28} In its second assignment of error, Tallmadge contends that the council did not act pursuant to a quasi-judicial proceeding. The Ohio Supreme Court has held that functions of an administrative body are quasi-judicial where (1) the administrative body employs discretion in adjudicating the rights and duties of the parties involved and (2) notice, hearing and the opportunity to produce evidence are provided. Union TitleCo. v. State Bd. of Edn. (1990), 51 Ohio St.3d 189, 190-91;M.J. Kelley, 32 Ohio St.2d at 153.
 {¶ 29} Cases from the Sixth and Seventh Districts provide guidance for our determination of whether Tallmadge's decision resulted from quasi-judicial proceedings. In Talbut v.Perrysburg (1991), 72 Ohio App. 3d 475, a Sixth District case, the City argued that the court lacked jurisdiction under R.C. 2596.01 to hear the appeal of a zoning decision because the decision was not the result of a quasi-judicial proceeding. As with the instant matter, Perrysburg City Council referred zoning applications for conditional use to the Planning Committee who made a recommendation to the City Council. The court held that the council's proceedings resembled a court proceeding because the council exercised discretion in adjudicating the rights of the parties and that the City's process afforded the parties notice, hearing and the opportunity to present evidence. Specifically pertinent to this matter, the court found that through the City's applications, it had positioned itself as the final arbiter and exercised discretion over zoning questions, including conditional use permits, and that the this process was quasi-judicial in nature. Id. at 479.
 {¶ 30} Ivkovich v. Steubenville (2001), 144 Ohio App.3d 25, a Seventh District case, also provides direction. The Ivkovich
court held that the City Council's decision to grant a conditional use permit was made pursuant to a quasi-judicial proceeding even though the zoning code did not require notice or a hearing for the City Council's approval of a recommendation regarding conditional use. Id. at 33. Relying on Talbut, theIvkovich court found that the hearing at which the City Council granted the conditional use permit and thus adopted the recommendation of the City Planning Commission, resembled a court proceeding. The court found that the council exercised discretion in reaching its determination because the council accepted statements from both parties and reviewed these statements along with the Commission's recommendation. Id.
 {¶ 31} Tall. Ord. 1189.09 requires a public hearing by P Z within thirty days of acceptance of an application and further requires a hearing on conditional use within thirty-five days of the establishment of a public hearing by P Z. Newspaper notice of a public hearing at least twenty days prior to the hearing is required by Tall. Ord. 1189.10. Tall. Ord. 1189.11 requires that written notice of the public hearing be mailed to all property owners within five hundred feet of the property at issue. Tall. Ord. 1189.12 mandates that the Zoning Inspector post a sign indicating the size of the property, proposed use, existing zoning and date of hearing. The Zoning Code further requires that the City Council render its decision within sixty-five days of its receipt of P Z's recommendation.
 {¶ 32} In the instant case, Gross Builders filed an application with the City of Tallmadge for the approval and grant of a conditional zoning permit for a PUD. Tallmadge City Council held a meeting on April 19, 2004 regarding Gross Builders' application during which it heard an extensive presentation from Gross Builders, which included testimony from various experts and Gross Builders' employees regarding the proposed project's compliance with Tallmadge's zoning applications. Gross Builders hired a court reporter to attend the meeting. The court reporter administered an oath to all parties testifying on Gross Builders' behalf except two witnesses. The court reporter also transcribed minutes of the meeting. Both parties had legal counsel present. Members of the City Council made comments and asked questions of Gross Builders and its experts.
 {¶ 33} Although Tallmadge's ordinances did not require the City Council to give notice or hold a hearing, the Council did give notice and held a hearing which was akin to a judicial proceeding wherein each side had legal representation. Council heard testimony from each side, asked and answered questions, and reviewed evidence presented by Gross Builders. See Talbut,72 Ohio App.3d at 477. Moreover, the Council was the final arbiter of the zoning decision and considered P Z's recommendation in reaching its decision. See Ivkovich, 144 Ohio App.3d at 33. In addition, Tallmadge ordinances required P Z to provide notice and a hearing for the applicant and interested parties.
 {¶ 34} Given the above facts, this Court finds that the Council exercised discretion in reaching its decision to reject Gross Builders' application. We thus determine that the Council's decision resulted from a quasi-judicial proceeding of an administrative agency which was appealable to the court of common pleas pursuant to R.C. 2506.01. We thus overrule Appellant's second assignment of error.
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FOUND THATTHE APPELLEES' PROJECT WAS IN FULL COMPLIANCE WITH THEREQUIREMENTS OF THE ZONING CODE."
 {¶ 35} In its third assignment of error, Appellant contends that the trial court erred when it found that Gross Builders' project fully complied with Tallmadge's zoning code requirements. Appellant specifically argues that Gross Builders failed to comply with Tallmadge's zoning code because Gross Builders' development plan fails to comply with the zoning code's location requirements for placement of individual lots on public streets, with sidewalks.
 {¶ 36} Generally, issues that are not introduced in the common pleas court cannot be raised for the first time on appeal.Holman v. Grandview Hosp. Med. Ctr. (1987),37 Ohio App.3d 151, 157. A failure to raise an issue during an administrative appeal before the common pleas court operates as a waiver of the party's right to assert the issue for the first time to an appellate court. Thrower v. Akron Dept. of Public Hous. AppealsBd., 9th Dist. No. 20778, 2002-Ohio-3409, at ¶ 20, citing Stateex rel. Zollner v. Indus. Comm. (1993), 66 Ohio St.3d 276, 278. Since Tallmadge has raised these issues for the first time on appeal, this Court is precluded from addressing them. Accordingly, Tallmadge's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT ERRED WHEN IT DETERMINED THE CITY COULD NOTCOMPEL IMPLEMENTATION OF ITS COMPREHENSIVE PLAN IN ITS ZONINGDECISION."
 {¶ 37} In Appellant's fourth assignment of error, it contends that the trial court erred in finding that the City could not compel implementation of its comprehensive plan into its zoning decision. More specifically, Tallmadge argues that the zoning code was adopted in accordance with the comprehensive plan and thus has the force of law. We disagree.
 {¶ 38} Appellant's administrative appeal from the City Council's decision to the common pleas court was governed by R.C.2506.01 et seq. When reviewing a decision pursuant to R.C.2506.04, the common pleas court:
"considers the `whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." Henley v.Youngstown Bd. of Zoning Appeals (2000), 90 Ohio St.3d 142, 147.
 {¶ 39} Pursuant to R.C. 2506.04, the common pleas court may "affirm, reverse, vacate, or modify the order * * * or remand the cause to the officer or body appealed from with instructions to enter an order * * * consistent with the findings or opinion of the court."
 {¶ 40} While the Appellant's appeal to this Court is also governed by R.C. 2506.01 et seq., "[t]he standard of review to be applied by [this Court] in an R.C. 2506.04 appeal is `morelimited in scope.'" (Emphasis sic.) Henley,90 Ohio St.3d at 147, citing Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34. InHenley the Ohio Supreme Court explained its analysis of this Court's review procedure stating:
"[R.C. 2506.04] grants a more limited power to the court of appeals[,] * * * which does not include the same extensive power to weigh `the preponderance of substantial, reliable, and probative evidence,' as is granted to the common pleas court. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals * * * might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." (Citations omitted). Henley,90 Ohio St.3d at 147.
 {¶ 41} Therefore, when reviewing a common pleas court's order which determined an appeal from an administrative agency, "[w]e must affirm the [trial court] unless that court's decision `is not supported by a preponderance of reliable, probative and substantial evidence.'" (Citations omitted.) Russell v. Pub.Health Hous. Appeals Dept. (2001), 142 Ohio App.3d 430, 432; see, also, Copley Twp. Bd. of Trustees v. Lorenzetti (2001),146 Ohio App.3d 450, 454. In making this determination, this Court applies an abuse of discretion standard. Id. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
 {¶ 42} When reviewing zoning issues on appeal, "legal matters are determined by facts, not by belief or desires." Lorenzetti,146 Ohio App.3d at 455, quoting Libis v. Bd. of Zoning Appeals
(1972), 33 Ohio App.2d 94, 100. Accordingly, the common pleas court's decision must be supported by facts.
 {¶ 43} Tall. Ord. 1189.01, et al. governs applications for conditional zoning certificates for conditionally permitted uses and thus provides the pertinent requirements. A review of these applications demonstrates the lack of any express requirement that an application for a conditionally permitted use comply with the City's comprehensive plan.
 {¶ 44} A review of the evidence weighed by the common pleas court reveals that, although Tallmadge adopted a comprehensive plan in 1991 and then later adopted an updated version of the comprehensive plan in 1997, the City failed to incorporate the plan into its zoning code. The Application adopting the comprehensive plan states that "the revised comprehensive plan developed for the City is approved and adopted", but neither the 1991 nor the 1997 plan ever expressly stated that applicants are required to comply with the comprehensive plan or that the plan was to be incorporated into the City's existing zoning applications. The zoning code refers to the "Master Plan" requirements, which we can only surmise to be a reference to its comprehensive plans, nonetheless, the City neglected to formally adopt either of these comprehensive plans.
 {¶ 45} In cases involving a comprehensive plan or a master plan that was not incorporated into a city's zoning code, courts have held that the city should not consider these general aspirations in evaluating whether a proposed use complies with the city's standards for permitted use. See Hydraulic PressBrick Co. v. Council of City of Independence (1984),16 Ohio App.3d 204 (finding that the trial court erred in affirming the city council's denial of permission to drill a gas well because the city relied on general aspirations in reaching its decision which were not legislatively adopted standards); Gillespie v.Stow (1989), 65 Ohio App.3d 601 (holding that the trial court erred in affirming the city council's denial of the conditional zoning certificate when the council acted outside the administrative power vested through the zoning application and that council cannot deny a conditional zoning certificate because the conditionally permitted use proposed is no longer desired for the proposed location). But, see K-Mart Corp. v. Westlake
(1997), 121 Ohio App.3d 630 (holding that the city could review its guide plan in reaching zoning decisions because the guide plan was specifically incorporated into the city's zoning code which stated that an objective of the zoning code was to "carry out the objectives of the Guide Plan").
 {¶ 46} "Any condition which council includes in the resolution granting the conditional zoning certificate must also be within the power of council." Gillespie,65 Ohio App.3d at 607. However, because adherence to the comprehensive plan is not required in the code, the Council could not legitimately reject Gross Builders' application on this basis. Consequently, Gross Builders were only required to comply with Tallmadge's zoning applications and not the comprehensive plan. Tallmadge's contention that it can consider conformance with its comprehensive plan when determining whether to approve an application is simply not supported by its zoning code.
 {¶ 47} We cannot find that the trial court abused its discretion in affirming the Magistrate's decision. Tallmadge City Council has no legal authority to deny Gross Builders' application based on its alleged lack of compliance with its comprehensive plan, which was not incorporated into the City's zoning code. Gross Builders clearly submitted a valid application for conditional use, which fully complied with Tallmadge's zoning code and as such, Gross Builders' application should have been granted. Tallmadge City Council's decision was clearly unsupported by a preponderance of substantial, reliable and probative evidence.
 III. {¶ 48} Appellant's four assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment Affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, P.J., Batchelder, J., Concur.
[1] A Community Unit Plan ("CUP"), as described in Peachtree,
is the same as a Planned Unit Development ("PUD"), as authorized by R.C. 303.022. Peachtree, 67 Ohio St.2d at 345, fn.1.